A94A1306. MARTIN v. THE STATE.
(448 SE2d 471)

ANDREWS, Judge.

Martin was indicted for driving under the influence of methamphetamine and amphetamine and for violations of the Georgia Controlled Substances Act for possession of methamphetamine and amphetamine. A jury found him not guilty of the DUI and possession of amphetamine charges and guilty of possession of methamphetamine. He appeals from the judgment entered on the conviction.

While driving on Georgia Highway 400 on the morning of November 20, 1992, Martin's vehicle ran into the rear of a truck as both vehicles were traveling south in excess of 50 mph. Both vehicles stopped at the scene and, shortly thereafter, a police officer arrived to investigate the accident. As a result of the investigation, the officer arrested Martin for DUI, advised him of implied consent rights, and Martin consented to giving blood and urine samples. Martin's urine sample was analyzed by the State Crime Lab and tested positive for the presence of methamphetamine and amphetamine.

1. Martin claims the trial court erred by failing to grant his motion to suppress the test results on the urine sample obtained after his arrest because: (1) there was no probable cause to arrest him for DUI; (2) the arresting officer was not authorized to invoke the implied consent to chemical test procedures of OCGA § 40-5-55 because the officer did not have reasonable grounds to believe he was driving

under the influence of drugs or alcohol in violation of OCGA § 40-6-391; and (3) the officer did not properly advise him of his implied consent rights.

The officer's investigation revealed that at about 8:00 a.m. as a truck was traveling south at about 50 mph, Martin's vehicle approached the truck from the rear traveling about 55 mph and struck the rear of the truck. During his investigation, the officer asked Martin on two occasions how the accident occurred and Martin replied on both occasions that he did not know. The officer observed that Martin was wearing dark sunglasses although the day was cloudy and overcast. Martin removed his sunglasses at the officer's request and the officer observed that Martin's eyes were dilated and remained dilated in the daylight. Martin displayed no other physical manifestations that he was under the influence of drugs or alcohol. Based primarily on Martin's inability to explain how the accident occurred and his dilated eyes, the officer placed Martin under arrest for DUI and informed him of his implied consent rights.

Under OCGA § 40-5-55 (a), "any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his blood, breath, or urine or other bodily substances, for the purpose of determining the alcoholic or drug content of his blood, *if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391. . . .* The test or tests shall be administered at the request of a law enforcement officer having *reasonable grounds* to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391." (Emphasis supplied.) Since Martin was arrested at the scene for driving under the influence, if there was probable cause for the arrest,[1] the officer clearly had "reasonable grounds" upon which to invoke the implied consent procedure. *Davis v. State*, 187 Ga. App. 517, 518-519 (370 SE2d 779) (1988); *Napier v. State*, 184 Ga. App. 770, 771 (362 SE2d 501) (1987). "A warrantless arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed . . . an offense." (Citations and punctuation omitted.) *Hall v. State*, 200 Ga. App. 585, 586 (409 SE2d 221)

---

[1] Although Martin did not initially raise the probable cause issue in his motion to suppress, the trial court concluded it was adequately raised at the hearing on the motion. The State does not claim the issue was not properly raised in the written motion. See *State v. Armstrong*, 203 Ga. App. 159, 160 (416 SE2d 537) (1992).

(1991).

Here, after Martin agreed to remove his sunglasses, the officer observed that his eyes remained dilated, one of the physical manifestations that officers are trained to observe as evidence that a driver is under the influence of drugs or alcohol. See *Lance v. State*, 191 Ga. App. 701, 704 (382 SE2d 726) (1989) (methamphetamine); *Grier v. State*, 173 Ga. App. 739 (327 SE2d 849) (1985) (alcohol). The circumstances of the unusual accident, combined with Martin's inability to give the officer any explanation as to how or why he drove his vehicle into the rear of the truck, provided additional evidence that he was driving under the influence. "By considering all the facts available to him and weighing the reasonableness and probabilities of the circumstances, the officer had the requisite probable cause to arrest [Martin for driving under the influence]." *Hall*, supra at 587; *Griggs v. State*, 167 Ga. App. 581, 582 (307 SE2d 75) (1983).

As to the claim that the officer did not properly advise him of his implied consent rights, Martin argues on appeal that the officer advised him that he had the right to an additional chemical "test" of his own choosing and under OCGA § 40-6-392 (a) (3) he should have been advised that he had the right to an additional "test or tests" of his own choosing. Martin did not request any independent testing. Since this ground was not raised in support of the motion to suppress, nor was it ruled on by the trial court, it provides no basis for appellate review. *Holden v. State*, 202 Ga. App. 558, 562 (414 SE2d 910) (1992). In any event, although not a verbatim recitation of the language of the statute, Martin was sufficiently advised of his right to independent testing of the various bodily substances. *Howard v. Cofer*, 150 Ga. App. 579, 580 (258 SE2d 195) (1979).

2. Martin claims the trial court erred in not providing him with copies of the analytical methods approved by the GBI's Division of Forensic Sciences for the crime lab; that the State failed to prove the chemical testing of his urine was done in compliance with the methods approved by the Division of Forensic Sciences; and the State failed to prove that Dr. McCurdy, who performed the analysis, was licensed to do so by the Division of Forensic Sciences.

As to Martin's claim that the trial court erred by not providing him with copies of the methods approved by the Division of Forensic Sciences, this contention was not supported by argument or citation of authority in the appellant's brief and is deemed abandoned. Court of Appeals Rule 15 (c) (2).

There was ample evidence that the chemical testing was done in compliance with methods approved by the Division of Forensic Sciences and Dr. McCurdy testified that he possessed a valid permit to perform the analysis issued by the Division of Forensic Sciences. See OCGA § 40-6-392 (a) (1). There is no merit to these enumerations of

error.

3. Martin contends the trial court erroneously overruled his objections to testimony given by an unlicensed crime lab technician, and to testimony from Dr. McCurdy based on work performed by the technician.

Pursuant to OCGA § 40-6-392 (a) (1), "[c]hemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation . . . and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose." The State presented evidence that the crime lab conducted an initial screening test on Martin's urine sample, referred to as the urine EMIT test, which indicated the "presumptive presence" of an amphetamine-like substance. After the positive screening test, additional testing was done using a gas chromatograph/mass spectrometer which confirmed the presence of methamphetamine and amphetamine.

The State presented testimony from a crime lab technician involved in the initial screening test. It is undisputed that the technician did not possess a permit issued by the Division of Forensic Sciences to conduct chemical analysis pursuant to OCGA § 40-6-392. The technician did not offer an opinion with respect to chemical analysis, or interpret any testing, nor did she make any report as to the results of testing. Apparently, the State offered the testimony to lay a foundation for admission of test results in response to objections raised by the defense. The technician described her performance of certain non-discretionary, non-technical, mechanical tasks, done in accordance with crime lab procedures, to initiate the urine EMIT test which was performed by a machine. The only task performed by the technician which arguably involved some judgment on her part was checking the pH level of the tested sample but there was testimony that this task was subject to review by her supervisor and that any modification of the pH level of a sample was done by her supervisor. The technician also testified that Dr. McCurdy insured that the machine was properly operating and that she gave the test data generated by the machine to others for interpretation and reporting on the results of the test. Dr. McCurdy testified that the technician worked under his supervision and that he interpreted the data produced by the urine EMIT test.

Based on "presumptive positive" findings in the urine EMIT test for the presence of an amphetamine-like substance, Dr. McCurdy testified that he personally conducted additional testing with the gas chromatograph/mass spectrometer that confirmed the presence of methamphetamine and amphetamine in Martin's urine sample. He

also testified that it was possible the presence of amphetamine may have resulted, not from Martin's ingestion of that substance, but as the result of the body's metabolic processes after Martin ingested methamphetamine.

The gravamen of Martin's objections to the testimony of the technician and Dr. McCurdy was that the technician, who held no permit to perform chemical analysis, actually performed or partially performed the urine EMIT test. He argues that since the technician was without the permit required by OCGA § 40-6-392 (a) (1), the urine EMIT test was invalid and because the testing performed by Dr. McCurdy was at least partially based on initial testing performed by the technician, the later testing was also invalid and all testimony as to testing should have been excluded.

We do not agree with Martin's contention that the technician performed or partly performed the chemical analysis of the urine sample within the meaning of OCGA § 40-6-392. It was not necessary for the technician to possess the permit required by OCGA § 40-6-392 (a) (1) in order to perform the type of tasks to which she testified. The trial court did not err in overruling Martin's objections on this ground and correctly concluded that the duties of the technician, done in accordance with crime lab procedures and under the supervision of Dr. McCurdy, did not constitute actual performance of the chemical analysis.

4. Martin claims the trial court erroneously allowed a State's witness to testify after the witness was added to the State's witness list on the morning the trial commenced. On the morning of the first day of trial, Monday, August 16, just prior to commencement of the trial, the State served Martin with an updated witness list adding an additional witness, the crime lab technician. Well prior to trial, the State had previously complied with Martin's demand for a list of the State's witnesses. In a hearing before the trial commenced, the prosecuting attorney stated that, while interviewing Dr. McCurdy on Friday afternoon, August 13, in preparation for trial, he first became aware that there was a lab technician who performed certain duties relating to the urine EMIT test. He stated that, although he did not believe it would be necessary to call the technician as a witness, he added her out of an abundance of caution and was unable to serve defense counsel with the updated list until Monday morning prior to trial.

The trial court initially denied defense counsel's motion for a continuance, then granted defense counsel an opportunity to contact the technician prior to the start of the trial. After a recess, the prosecuting attorney announced to the trial court that defense counsel had spoken with the technician and that he was still uncertain as to whether any issue affecting the admissibility of the test results might

necessitate testimony from the technician. The trial court asked for defense counsel's response. Defense counsel replied: "Judge, I'm ready to go as long as — obviously, I don't have [the technician] under subpoena now, but if I can be sure that if I need her I can get her, I'm ready to go." The trial court stated that the trial could be delayed to let defense counsel subpoena the technician and further stated: "[A]nd if it takes all week, we can wait for [the technician] to get here. We can try another case in the middle. . . . Are y'all ready to strike a jury?" Defense counsel responded that he was ready to proceed.

The record demonstrates that after defense counsel conferred with the technician, he waived the claimed error. Rather than supporting a claim of unfair surprise, the record shows that defense counsel apparently concluded the added witness was favorable to the defense; that the defense desired to have the witness available to testify; and that defense counsel announced he was ready to proceed with the trial. Martin's claim on appeal that allowing the added witness to testify was reversible error under *Bentley v. State*, 210 Ga. App. 862 (438 SE2d 110) (1993) is patently frivolous.

5. Lastly, Martin argues that the trial court erred in allowing Dr. McCurdy to testify that he performed a second analysis of the urine sample on the gas chromatograph/mass spectrometer and obtained the exact same results as the first such analysis. Martin objected on the basis that he filed a timely demand for written scientific reports pursuant to OCGA § 17-7-211 and the State did not provide him with a written report of the results of the second analysis.

In compliance with OCGA § 17-7-211, the State provided Martin a copy of the written report done on the first analysis performed by Dr. McCurdy. Dr. McCurdy testified that to double-check the first analysis, he performed a second analysis. He orally informed the prosecutor of the second analysis and the results but did not do another written report. The State provided Martin with the raw data generated by the second analysis, even though it was not a scientific report containing findings or opinions. See *Roberts v. State*, 196 Ga. App. 450 (396 SE2d 81) (1990).

"OCGA § 17-7-211 applies to scientific reports in writing and not oral reports of experts relaying the results of tests." (Citations and punctuation omitted.) *Herndon v. State*, 187 Ga. App. 77 (369 SE2d 264) (1988). Since no written report containing findings or opinions was made on the second analysis, there was no violation of OCGA § 17-7-211 and the trial court correctly overruled the objection to Dr. McCurdy's testimony. Id.; *Beck v. State*, 196 Ga. App. 269 (396 SE2d 59) (1990).

*Judgment affirmed. Beasley, P. J., and Johnson, J., concur.*

DECIDED AUGUST 15, 1994 —
RECONSIDERATION DENIED SEPTEMBER 12, 1994 —

*Banks & Stubbs, Rafe Banks III,* for appellant.
*Garry T. Moss, District Attorney, C. David Gafnea, Assistant District Attorney,* for appellee.