A95A2558. HAMMOND v. THE STATE.
A95A2559. DURDEN v. THE STATE.
(470 SE2d 302)

POPE, Presiding Judge.

Defendants Lloyd Hammond II and Timothy Durden were tried together and convicted of violating the Georgia Controlled Substances Act. Defendants appeal their convictions following the denial of their motions for a new trial. Concluding that the evidence was not sufficient to warrant the convictions, we reverse.

Construed most favorably to the verdict, the evidence shows that a confidential informant (CI) was arrested by the Gwinnett County police on drug charges. According to Gwinnett County Police Officer Ponder, the CI told him that he knew of "people" who were willing to sell drugs. Thereafter, Ponder allowed the CI, on his own, to set up a drug buy to take place between a drug supplier, the CI and Ponder. The CI allegedly talked to the supplier by phone. Ponder did not overhear the conversation, nor did he talk to the supplier himself. The CI did not at any time divulge the supplier's name or describe the supplier to Ponder.

Based on what the CI told him, Ponder, who was wearing a radio transmitter, and the CI went to a bar in Norcross, Georgia, to await the arrival of the supplier. Other police officers, including Jose Diaz, waited in the surrounding area in unmarked cars, and one officer videotaped the scene from a van. The CI told Ponder that the suppliers might be in a blue Chevrolet Blazer. Subsequently, Durden ap-

peared immediately outside the door to the bar and motioned for the CI. After talking with Durden, the CI returned to the table and said that the people did not want to deal directly with Ponder because they did not know him. The CI then told Ponder that he was going outside to see the drugs.

When the CI returned, he told Ponder that he had seen cocaine in a Cadillac, and that the people wanted the CI to bring them the money for the drugs. At this point, Ponder left the bar and walked toward his car. As he did so, he noticed Hammond standing next to the Cadillac. Without speaking to Durden or Hammond, Ponder gave the signal for police to block off the Cadillac. Hammond was arrested next to the car while eating a hamburger. Durden was arrested standing in front of the bar. Neither defendant attempted to flee. When police tried to locate the CI, they discovered that he had left the scene.

Diaz searched the Cadillac and found no drugs. He also found no guns or drug paraphernalia. Both defendants were searched to no avail. Twenty minutes after defendants' arrest, however, Diaz noticed a plastic bag on top of an eight-foot wall which was approximately twenty feet from the Cadillac. Diaz retrieved the bag and found over four ounces of crack cocaine.

At trial, the State did not call the CI as a witness, and the CI's identity was not disclosed to defendants, even though defendants filed a motion seeking such disclosure. Although Diaz testified that there were no other people in the immediate vicinity of the Cadillac at the time of or immediately after defendants were arrested, both Diaz and Ponder testified that prior to the arrest there was traffic in and out of the lot, and there were people moving around in the area. The videotape introduced at trial did not show any illegal activity on defendants' part, and did not show either defendant approach the wall where the bag was found. The only indication that any drugs were ever in the Cadillac came from the information the CI gave to Ponder, as related to the jury by Ponder and the audiotape of Ponder's conversations with the CI.

*Case Nos. A95A2558, A95A2559*

Both defendants contend that the evidence in this case was insufficient to support their convictions under the standard announced in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We agree. The only evidence of defendants' alleged possession of the cocaine found on the wall, including the inference that defendants were in Temptation's parking lot waiting for an unknown person (Ponder) to come out and purchase drugs from them, is based on what the CI told Ponder. That evidence, and the CI's statement that

he actually went to the Cadillac and saw drugs, constitutes hearsay. And while the statements made to Ponder by the CI might be admissible to explain Ponder's conduct in instigating defendants' arrest, the content of the CI's statements is not probative of any of the matters asserted therein. See *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982); *State v. Speir*, 189 Ga. App. 254, 255 (375 SE2d 298) (1988).

The CI's statements also could not be used as probative evidence of defendants' possession of the cocaine under the "necessity exception" to the hearsay rule found in OCGA § 24-3-1 (b). "OCGA § 24-3-1 (b) permits the use of hearsay evidence 'in specified cases from necessity.' An exception to the rule against the admission of hearsay will be allowed 'from necessity' where 'necessity' and 'particularized guarantees of trustworthiness' are established. *Roper v. State*, 263 Ga. 201 (2) (429 SE2d 668) (1993); *McKissick v. State*, 263 Ga. 188 (3) (429 SE2d 655) (1993)." *Hayes v. State*, 265 Ga. 1 (3) (453 SE2d 11) (1995). In this case, no particularized guarantees as to the CI's trustworthiness were established. In fact, Ponder specifically testified that he had no basis to believe anything the CI told him. Absent any evidence of trustworthiness on the CI's part, and in light of the very circumstances surrounding his cooperation with the police, the CI's statements also do not constitute probative evidence of possession under the res gestae doctrine because it cannot be said that such statements were free from all suspicion of device, or even that they were spontaneous in nature. See *Shapiro Packing Co. v. Landrum*, 109 Ga. App. 519 (136 SE2d 446) (1964).

Although it is true that defendants were in the vicinity of the bag of cocaine at the time they were arrested, "[i]t is well established that merely having been in the vicinity of contraband does not, without more, establish possession [of that contraband]. (Cits.) *Donaldson v. State*, 134 Ga. App. 755, 756 (216 SE2d 645) (1975). *Blount v. State*, 181 Ga. App. 330, 332 (352 SE2d 220) (1986)." (Punctuation omitted.) *Dawson v. State*, 183 Ga. App. 94, 97 (357 SE2d 891) (1987). This is especially true in cases like this, where the record demonstrates that other individuals had access to the area prior to the time of arrest.

Absent competent evidence demonstrating that defendants had either actual or constructive possession of the bag of drugs found on the wall, we are compelled to hold that the evidence was insufficient for the jury to conclude that defendants were guilty beyond a reasonable doubt of the crimes for which they were convicted. See *Donaldson*, supra, 134 Ga. App. at 755; *Williams v. State*, 126 Ga. App. 350, 354-356 (190 SE2d 785) (1972). Moreover, we note that this case clearly is distinguishable from *Lewis v. State*, 186 Ga. App. 349 (367 SE2d 123) (1988). Unlike the facts in this case, in *Lewis* the defendant attempted to flee from police, and during this flight was actually

seen stopping and fumbling around in his car on the very spot where drugs were later recovered. Based on the above, we reverse both defendants' convictions.

*Judgments reversed. McMurray, P. J., Birdsong, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur. Beasley, C. J., dissents.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent, as the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), taking into account OCGA § 24-4-6. As in *Lewis v. State*, 186 Ga. App. 349, 351 (367 SE2d 123) (1988), a case which is analogous in circumstances, "[t]aking into account every reasonable inference drawable by the jury in reaching the verdict, the jury could find that the evidence excludes every other reasonable hypothesis save [that which establishes the guilt of the defendants beyond a reasonable doubt]."

The cocaine was in a plastic Kroger grocery bag which had been placed on a wall seven to eight feet high about fifteen feet from, and thus within a few steps of, defendants' car. Ponder had looked in the car for such a bag based on his conversation with the informant after the informant returned from the car. The rain had stopped less than 40 minutes before the defendants' arrest, shortly before they arrived. The bag was dry, but the wall was wet. The police who were surveilling the area saw no one else in the vicinity of the bag. The defendants had the opportunity to put the bag there and the motive of caution to do so; they had already had contact with the confidential informant and were waiting for someone, who was unknown to them, to come out of the Temptations Poolroom Lounge. Although the defendants came to the bar parking lot, they never entered the bar. Instead, Durden met with the informant at the door and took him to the car; Hammond stayed with the car, which they had parked at the end of the building next to a wall bordering the parking lot. The jury saw a videotape of the parking lot area taken at the time of the incident by a surveilling officer plus they heard an audiotape of the investigator involved in the attempted purchase, as he talked with the confidential informant and other agents. We do not have these items nor the diagram used to explain the testimony.

A hypothesis is that someone else placed the bag containing 119.8 grams (approximately 4.5 ounces) of 99 percent pure cocaine worth between $850-$1,100 per ounce on top of the wall and walked off, leaving the cocaine for whoever might find it. That person would have left the cocaine in public view and accessibility shortly before defendants' arrival or after they had parked just 15 feet away. The jury could reject this, and any other conceivable hypothesis deducible

from the evidence, as not reasonable. The law is that "the jury is always the arbiter of what is a *reasonable* hypothesis. [Cits.]" (Emphasis in original.) *Elliott v. State*, 193 Ga. App. 49, 50 (387 SE2d 18) (1989). See also *Key v. State*, 213 Ga. App. 556, 557 (445 SE2d 349) (1994).

Likewise, " '[d]eterminations of witness credibility, weighing the evidence, and resolutions of conflicts presented by the evidence are within the province of the jury. (Cit.)' [Cit.]" *Hesterlee v. State*, 210 Ga. App. 330, 332 (1) (436 SE2d 32) (1993).

Defendants did not even consider the evidence as warranting motions for directed verdict but rather awaited the jury's deliberations about it and decision based upon it. They filed motions for new trial in this case, in which both defendants sought new trials on the general grounds. The judge considered "the entire file, including the transcript . . ., exhibits, motions, and affidavits." He also heard arguments. Exercising not only the fact-reviewing function but also the broad discretion granted to trial judges to assure that justice is administered, see *Mills v. State*, 188 Ga. 616, 623-625 (4 SE2d 453) (1939), he denied the motions. This did not constitute legal, reversible error.

DECIDED MARCH 15, 1996.

*Ronnie K. Batchelor*, for appellant (case no. A95A2558).
*Sampson Oliver, Jr.*, for appellant (case no. A95A2559).
*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney*, for appellee.