## A99A0604. SNOKE v. THE STATE.
(516 SE2d 541)

JOHNSON, Chief Judge.

A jury found Raymond William Snoke guilty of trafficking in methamphetamine, possession of methamphetamine, distribution of methamphetamine, possession of less than one ounce of marijuana, and sale of marijuana. Snoke appeals from the judgment of conviction entered upon the jury's verdict. For the following reasons, we affirm in part and reverse in part.

When construed in a light most favorable to support the verdict, the evidence presented at trial shows that in late August 1995, the police attempted to set up a controlled buy of a half-ounce of methamphetamine from Snoke for $900. The buy was to be made by a confidential informant using marked government money. By the time the undercover police officer arrived with the money, the purchase had been completed, Snoke had departed and the informant was already in possession of the methamphetamine. The informant gave the methamphetamine to the investigating officer.

Another drug buy was arranged. Approximately one week later, an undercover officer and the informant went to Snoke's residence to pay for the methamphetamine purchased the week before and to buy marijuana. When they arrived at Snoke's home, Snoke commented that he needed his money. The informant and Snoke went into the kitchen, and the officer stayed in the living room. After a few minutes, the informant came out of the kitchen and had a short conversation with the undercover officer, who then gave the informant $900 in marked $20 bills to pay Snoke for the methamphetamine. The informant carried the money into the kitchen but remained out of the officer's sight. The officer was called into the kitchen to finalize the marijuana sale a few minutes later. The officer apologized to Snoke for not paying him sooner for the methamphetamine. The officer then commented on the quality of the methamphetamine he had been sold, and Snoke replied, "it was good stuff." In response to a similar apology by the informant, Snoke told them that when he was not at home, he had people at his house selling for him.

Based upon these incidents, the police obtained a search warrant for Snoke's house. Meanwhile, the informant arranged for the undercover officer to purchase two ounces of methamphetamine from Snoke. The search and the methamphetamine purchase were to occur three days after the previous marijuana purchase. The search was to be conducted immediately upon completion of purchase. When the officer and informant arrived at Snoke's home to buy the methamphetamine, Snoke said that he had only one ounce of methamphetamine to sell. The sale took place in Snoke's kitchen. Snoke got a bag of methamphetamine from a file cabinet near his kitchen desk

and cut two "lines" of methamphetamine from it. The two "lines" were put into a corner which Snoke cut from a plastic sandwich bag. Snoke gave the larger bag of methamphetamine to the officer. This methamphetamine was subsequently determined to weigh 27.5 grams. As soon as the officer and informant left, the police arrived at Snoke's home to execute the search warrant. During the search, officers found three grams of methamphetamine on the desk in Snoke's kitchen, consistent in size and packaging with the two "lines" which Snoke had cut from the original package he had delivered to the undercover officer moments earlier. The combined weight of the methamphetamine in the two packages thus exceeded twenty-eight grams. The officers also found some of the marked money used to pay Snoke for the marijuana and the methamphetamine previously purchased by the informant.

1. Snoke asserts there is insufficient evidence to support his conviction of distribution of methamphetamine because only hearsay evidence supported this charge. Snoke argues that the investigating officer merely recounted information told to him by a confidential informant who did not testify at trial. We disagree.

It is clear from our review of the evidence that the jury had before it more than hearsay testimony regarding the charge of distribution of methamphetamine. Therefore, Snoke's reliance on *Hammond v. State*, 220 Ga. App. 760 (470 SE2d 302) (1996), and *State v. Speir*, 189 Ga. App. 254 (375 SE2d 298) (1988), is misplaced. Applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we find there was sufficient direct and circumstantial evidence to sustain Snoke's conviction of distribution of methamphetamine. See *Whitfield v. State*, 217 Ga. App. 402, 405 (3) (457 SE2d 682) (1995); OCGA § 24-4-6.

2. Snoke asserts that there was insufficient evidence to support his conviction of trafficking in methamphetamine because the amount sold was less than 28 grams. In pertinent part, OCGA § 16-13-31 (e) provides that "[a]ny person who knowingly sells, . . . delivers . . . *or has possession of 28 grams or more* of methamphetamine . . . commits the felony offense of trafficking in methamphetamine. . . ." (Emphasis supplied.)

Given the state of the evidence in this case, the case of *Hite v. State*, 206 Ga. App. 245, 246-247 (2) (424 SE2d 885) (1992), is persuasive. The jury would be authorized to infer that the methamphetamine in the two packages weighed more than twenty-eight grams and originally came from the same bag in Snoke's possession, which is sufficient evidence of possession to support the trafficking conviction. See id. at 247.

3. Snoke also argues that if his conviction for trafficking in methamphetamine is sustained by combining the weight of the metham-

phetamine found during the search with that sold to the undercover officer, his conviction of possession of methamphetamine must be vacated because it would be a lesser offense as a matter of fact to the trafficking charge. We agree and conclude that the possession of methamphetamine charge must be reversed.

Snoke was charged with possession of methamphetamine in count one of the indictment and with trafficking in methamphetamine in Count 3. Count 3 alleged that the trafficking offense was "separate and distinct" from the possession offense alleged in Count 1 and that it involved a quantity of methamphetamine "separate and distinct from that alleged in Count one." The jury was charged as to the allegations contained in all counts of the indictment. During trial, the state introduced evidence that in addition to the 27.5 and three grams of methamphetamine described above, residue of methamphetamine had also been seized in Snoke's house during the search. Before the forensic chemist testified as to the result of his analysis of this residue, a colloquy occurred in the presence of the jury between the trial court and the prosecutor. In response to a question from the trial court, the prosecutor confirmed that the evidence of methamphetamine residue was being introduced to establish only the possession charge and not the charge of trafficking. The record reveals, however, that the trial court did not give a limiting instruction to the jury regarding the purpose for which the evidence of methamphetamine residue was admitted but rather allowed the jurors to interpret the colloquy between the prosecutor and the court without the benefit of an explanatory instruction.

Although the state attempted to separate and distinguish the evidence seized during the search so that the jury could determine what portion of the methamphetamine was used only for trafficking and what portion was merely in Snoke's possession, it failed to do so. Thus, a fair risk exists that the jury used the same evidence to convict Snoke of both offenses.

In the cases of *Hancock v. State*, 210 Ga. App. 528, 533 (3) (c) (437 SE2d 610) (1993), and *Iglesias v. State*, 191 Ga. App. 403 (1) (381 SE2d 604) (1989), the evidence established that one of the offenses at issue was a lesser included offense as a matter of fact because the same evidence was used to prove both offenses. Accordingly, the conviction for the lesser included offenses had to be reversed. Because the state failed to negate the likelihood that the jury used the same evidence to prove both the possession and the trafficking offense, we find the holding in *Hancock* and *Iglesias* to be applicable. The situation in this case is analogous to one where a prosecutor might find forty-eight grams of methamphetamine in one search, in two packages, one weighing twenty-nine grams and the other weighing nineteen grams, and from that evidence try to argue that the defend-

ant could properly be charged and convicted on both trafficking and possession counts. The language of the statute, "28 grams or more," would not allow the prosecutor to divide the amount discovered during the search for the purpose of creating multiple charges. See OCGA § 16-13-31 (e).

4. Snoke contends that the trial court erred in admitting statements he made after invoking his *Miranda* rights. We disagree.

At a *Jackson-Denno* hearing, a captain in the sheriff's department testified that Snoke was placed in custody after his home was searched. The captain read Snoke his *Miranda* rights from a standard warning card. Snoke agreed to answer questions. Custodial interrogation continued for about five hours at Snoke's house and resumed at the sheriff's office. During this time, Snoke and the captain would argue, and Snoke would indicate to the captain that he no longer wanted to talk to him. The captain testified that whenever Snoke so indicated, questioning stopped and did not resume until Snoke initiated further discussion by saying he wanted to talk again. During the questioning, Snoke never requested a lawyer.

As Snoke never requested a lawyer, this issue is not before us. The trial court found that Snoke was properly advised of his *Miranda* rights and knowingly, freely, and voluntarily waived those rights and talked to the officer. The court also found that Snoke's conduct did not constitute a refusal to talk with the officer. By finding that Snoke's statements were knowingly, freely, and voluntarily made, the trial court rejected Snoke's claim that he had invoked his right to remain silent. See *Vaughan v. State*, 210 Ga. App. 381, 383 (3) (a) (2) (436 SE2d 19) (1993). A trial court's resolution of facts at a *Jackson-Denno* hearing, including determinations of credibility as to issues of whether an accused has waived his rights, will be upheld unless it is clearly erroneous. See *Underwood v. State*, 218 Ga. App. 530, 533 (2) (462 SE2d 434) (1995). The record supports the trial court's findings, and we find no error.

Even if Snoke had adequately asserted his right to remain silent, the captain could renew interrogation if Snoke initiated that communication. *Underwood*, supra. Viewing the captain's testimony in its entirety, we find that Snoke freely and voluntarily initiated all renewed conversations with the captain and thus repeatedly and intentionally relinquished his right to remain silent. See id.

5. Snoke contends the trial court erred in refusing to give his requested instruction regarding the voluntariness of his pre-trial statement. The requested instruction appears to have been copied from a charge book.

The trial court substantially charged the jury as to the law related to the voluntariness of Snoke's pre-trial statement. The jury was not charged, as requested by Snoke, as to the law to be applied if

a suspect asserts his *Miranda* rights during questioning. The trial court did not err in declining to give Snoke's requested charge.

Snoke's requested charge contained a section pertaining to the admission of the statements of defendants at a joint trial and another section pertaining to statements made during illegal detention. These issues were not raised by the evidence in this case. Thus the giving of Snoke's charge, as submitted, could have misled or confused the jury. The trial court does not err when it refuses to give a charge which might mislead or confuse the jury. See *Jones v. State*, 200 Ga. App. 519, 521 (2) (c) (408 SE2d 823) (1991); see also *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 182 (2) (a) (441 SE2d 453) (1994).

Even if an issue of whether Snoke asserted his right to remain silent had been raised, the omitted portion of the request to charge, which Snoke asserts resulted in error, was not adequately adjusted to the evidence regarding this issue. See generally *Jones*, supra; *House v. State*, 184 Ga. App. 724, 726 (4), (5) (362 SE2d 429) (1987). For example, this portion of the requested charge focuses on a defendant's request for an attorney. Snoke never asserted his right to counsel either before or during interrogation. "If any portion of a requested charge is inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper." (Citations, punctuation and emphasis omitted.) *Stinson v. Allstate*, supra at 182.

The judgment of conviction of possession of less than one ounce of marijuana, sale of marijuana, trafficking in methamphetamine, and distribution of methamphetamine is affirmed. The judgment of conviction of possession of methamphetamine is reversed.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Andrews, J., concur.*

DECIDED APRIL 16, 1999.

*Jeffrey P. Manciagli*, for appellant.
*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.