A99A2152. BELLAMY v. THE STATE.
A99A2153. LEWIS v. THE STATE.
(530 SE2d 243)

RUFFIN, Judge.

Michael Wayne Bellamy and Anthony Mark Lewis were tried jointly for trafficking in methamphetamine and possession of methamphetamine.[1] Following a bench trial, the trial court found the two guilty of both offenses. On appeal, Bellamy and Lewis challenge the sufficiency of the evidence. They also assert that the trial court erred (1) in denying a motion to suppress; (2) in admitting hearsay evi-

---

[1] Susie Gaudet and Michael Wayne Bellamy, Sr. also were charged with trafficking in methamphetamine and possession of methamphetamine, and Bellamy, Sr. was charged with possession of marijuana. Bellamy, Sr. was tried and found guilty of the two possession counts but was acquitted of trafficking in methamphetamine. Gaudet was scheduled to be tried with her co-defendants but failed to appear for trial. Neither is a party to this appeal.

dence; and (3) in failing to merge the possession count with the trafficking count. Because the appellants raise identical enumerations of error, we have consolidated the two appeals. For reasons that follow, we affirm.

The record demonstrates that, on December 2, 1997, members of the National Guard who were working with the East Metro Drug Enforcement Task Force (Task Force), were observing the house of a suspected drug trafficker from the woods nearby. The Task Force had information that a resident of the house was selling methamphetamine and that he stored the drugs somewhere on the property.

William Conger, a National Guard officer, testified that he saw two men drive up in a white Suburban and enter the house. Although it was dark outside, the front porch light was on, and Conger was able to identify Bellamy and Lewis as the two men exiting the truck. Approximately five minutes later, the two men left through the back door of the house and, carrying a flashlight, walked into the woods behind the house. Using binoculars and a night vision device, Conger saw Bellamy and Lewis dig in the ground before returning to the house with what appeared to be a plastic bag.

At 8:00 p.m., about an hour and a half after the guardsmen began observing the house, officers from the Task Force arrived to execute a search warrant. By the time the officers arrived, Conger had seen Bellamy and/or Lewis make a total of four trips into the woods. Conger also had watched the two men through the kitchen window, and he saw the two cooking something.

As the officers approached the house, Lewis came out the front door. The police identified themselves and ordered Lewis to stop, but he ran back into the house. One officer heard Lewis tell the other occupants that the police were there. Conger, who was still looking through the kitchen window from his vantage point in the woods, saw Bellamy run into the kitchen and begin pouring some sort of liquid down the sink.

The officers found Bellamy near the sink, with the water running. Officer Barry McIntosh searched Bellamy and found money and a pager. In the kitchen, McIntosh also found two plastic bags containing a chalky, white substance, scales, spoons, and two glass jars. Chemical testing revealed that the jars contained liquid methamphetamine and that the bags contained a total of 139.5 grams of methamphetamine.

Agent Robert Goodson found Lewis locked in a bathroom, sitting on top of the closed toilet seat. A search of Lewis yielded over $580.

Goodson took Bellamy outside and read him his *Miranda* rights. Bellamy then asked Goodson what he wanted to know, and Goodson asked Bellamy where he obtained his methamphetamine. Bellamy responded, "I can't tell you that." Goodson asked if there was any

additional methamphetamine in the woods, and Bellamy said that the officers "had it all."

1. In two enumerations of error, Bellamy and Lewis assert that the trial court erred in denying their motions to suppress. These assertions lack merit.

(a) With respect to Bellamy, we find that he waived the right to challenge the admissibility of the evidence on this ground by failing to file a written motion to suppress as required by OCGA § 17-5-30 (b).[2]

(b) With respect to Lewis,[3] we find that the trial court did not err in denying his motion to suppress. In reviewing the trial court's denial, we construe the evidence most favorably to uphold that court's ruling.[4] In so doing, we defer to the trial court's determination on the credibility of witnesses, and we accept the court's ruling on disputed facts unless it is clearly erroneous.[5]

In this case, the officer who swore out the affidavit testified that on December 1, 1997, a man was arrested for possession of methamphetamine. The arrestee told the officer that he obtained his drugs from a supplier named Mike, and the arrestee provided a physical description. The arrestee further stated that he would go to a house on Richard Road to pick up the methamphetamine and that sometimes Mike would have the methamphetamine in the house, but other times he would go outside the house for a few minutes and return with the drugs, as if he kept the drugs outside.

The arrestee agreed to act as an informant. While the police were listening on the phone, he called his supplier and arranged to buy two ounces of methamphetamine. The man with whom the informant spoke told the informant to come by the house in an hour to pick up the drugs. The informant described the house to police as a house on Richard Road with an American flag hanging in the front yard. The police verified the existence of a house matching the description given by the informant, and, on December 2, 1997, officers from the National Guard set up an observation point in the woods near the house. The guard officers observed men leave the house, walk into the woods, and return to the house.

Based upon this information, a search warrant was obtained, and the police found the methamphetamine. Bellamy and Lewis moved to suppress the evidence, and the trial court denied their

---

[2] *Belcher v. State*, 230 Ga. App. 235, 236 (1) (496 SE2d 306) (1998).
[3] We question whether Lewis has standing to challenge the validity of the search warrant as he did not live at the house that was searched. For purposes of our analysis, however, we will assume he has standing.
[4] *Floyd v. State*, 237 Ga. App. 586 (516 SE2d 96) (1999).
[5] Id.

motion, ruling that the affidavit upon which the search warrant was based sufficiently established probable cause. When, as here, probable cause for a search warrant is based upon an informant's tip, the standard for admissibility of the evidence obtained is whether:

> under the totality of the circumstances, including the veracity and basis of knowledge of the informant, there is a fair probability that contraband or evidence of a crime will be found in a particular place. While . . . knowledge is no longer an absolute requirement . . . , veracity and basis of knowledge are still major considerations in the probable cause analysis, and this court continues to hold that an affidavit submitted in support of a search warrant must set forth sufficient facts from which the magistrate or judge can independently determine the reliability of both the information and the informant.[6]

The State argues that the informant may be considered reliable because he made a statement against his penal interest. But the informant in this case was an unnamed informant, and thus, the "statement against interest" rule does not apply.[7] The tip from the unnamed informant may nevertheless:

> be proved reliable if portions of the tip are sufficiently corroborated. For the corroboration to be meaningful, the information corroborated must include a range of details relating to future actions of third parties not easily predicted, not to easily obtained current facts.[8]

Here, the tip was sufficiently corroborated. Not only did the informant tell the police about his supplier's past behavior, he also agreed to set up a drug buy and allowed the police to listen on the phone when the arrangements were made. The informant then directed the police to the house where they observed a man walking into the woods to retrieve an item after the drug buy was arranged.[9] Under these circumstances, the trial court did not err in finding the informant's tip sufficiently corroborated.[10]

(c) In a related enumeration of error, Lewis argues that the trial court should have suppressed the evidence because the information

---

[6] *Mitchell v. State*, 239 Ga. App. 735, 736 (1) (521 SE2d 873) (1999).
[7] *State v. Wesson*, 237 Ga. App. 789, 791 (516 SE2d 826) (1999).
[8] Id.
[9] Cf. *Smith v. State*, 237 Ga. App. 616, 619 (2) (516 SE2d 319) (1999) (by setting up drug buy, informant established reasonable suspicion).
[10] *Mitchell v. State*, supra.

upon which the affidavit was based was obtained illegally. Specifically, Lewis contends that the National Guardsmen who supplied information for the warrant observed Bellamy and Lewis walk into the woods from a vantage point located on the property itself. Lewis argues that because the intrusion on the property was not valid, the evidence must be suppressed.

At the motion to suppress hearing, no testimony was presented regarding whether the guardsmen were located on the Richard Road property or on a neighboring property. The only testimony showed that the officers were up a hill some yards from the house. Pretermitting whether the guardsmen were located on the Richard Road property, we find no basis for reversal.

"[E]vidence exclusion is an extreme sanction and one not favored in the law."[11] We have held that a suppression motion "must be sufficient to put the State on notice as to the type of search involved (without warrant vs. with warrant), which witness to bring to the hearing on the motion, and the legal issues to be resolved at that hearing."[12] We reasoned that such a rule would prevent suppression by ambush by discouraging defendants from obscuring or concealing the relevant issue until after the evidentiary hearing.[13] In his motion to suppress, Lewis did not argue that the evidence should be suppressed because the warrant was predicated upon unlawfully obtained information. Thus, he has waived this issue on appeal.

2. Bellamy and Lewis argue that the State failed to prove an essential element of the case because the forensic chemist who tested the drugs was unable to say whether the methamphetamine was pure or a mixture. Thus, the defendants assert, there is a fatal variance between the indictment, which alleged that the substance was a mixture, and the proof at trial. This assertion is absurd.

As the Supreme Court noted in *Gonzalez v. Abbot*, "No one . . . would take seriously the argument . . . that charging the defendant with trafficking in a 'substance containing cocaine' created a fatal variance with proof at trial that the defendant possessed a 'mixture containing cocaine.'"[14] But that is essentially the argument the defendants make by suggesting that, by being charged with trafficking in a "mixture" containing methamphetamine, there is a fatal variance if, in fact, the evidence shows that they actually were trafficking in pure methamphetamine. The statute under which the defendants were charged, OCGA § 16-13-31 (e), treats pure methamphetamine and a mixture containing methamphetamine equally.

---

[11] *State v. Roddy*, 231 Ga. App. 91, 93 (497 SE2d 653) (1998).

[12] (Punctuation and emphasis omitted.) Id.

[13] Id.

[14] 262 Ga. 671, 673 (1), n. 4 (425 SE2d 272) (1993).

Accordingly, any variance in proof at trial regarding whether the substance was a mixture containing methamphetamine or pure methamphetamine is not fatal.[15]

3. Bellamy and Lewis next assert that the trial court erred in admitting the forensic chemist's testimony that the substance she tested was methamphetamine. The two contend that the best evidence of the test results was the printout from the machine rather than the testimony of the expert. Additionally, Bellamy and Lewis argue that the chemist's testimony constituted inadmissible hearsay. These assertions are meritless.

The best evidence rule, or the "original document rule," provides that "[i]n order to prove the terms of a writing, *where the terms are material*, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent."[16] "When the existence of a fact, and not the contents of a writing, is the question at issue, both oral and written evidence of the fact may be admitted as primary evidence."[17]

As an initial matter, we are not persuaded that the raw data from a printout constitute a "writing" within the meaning of the best evidence rule.[18] Even if the printout is a writing, the best evidence rule does not bar introduction of the chemist's oral testimony regarding the test results. The issue here is the existence of a fact — whether the substance tested was methamphetamine — and not the contents or terms of the writing. Thus, the issue may be proved both by oral and written evidence.[19]

To the extent that Bellamy and Lewis challenge the admissibility of the evidence on hearsay grounds, this contention is equally meritless. In their briefs, the defendants contend that the chemist who testified did not actually perform the testing, but merely supervised. This contention is flatly contradicted by the record. Moreover, regardless of whether the chemist tested the substance or supervised the testing of the substance, her testimony regarding the results is admissible.[20]

4. Bellamy and Lewis challenge the sufficiency of the evidence to

---

[15] See *Belcher v. State*, 161 Ga. App. 442, 443 (1) (288 SE2d 299) (1982).

[16] (Emphasis supplied.) *Merrill Lynch &c. v. Zimmerman*, 248 Ga. 580 (285 SE2d 181) (1981).

[17] *State v. Hortman*, 185 Ga. App. 756, 757 (1) (365 SE2d 887) (1988).

[18] See *Gay v. State*, 228 Ga. App. 248, 249 (491 SE2d 469) (1997) ("OCGA § 17-7-211 applies to scientific reports in writing and not oral reports of experts relaying the results of tests") (punctuation omitted); see also *Martin v. State*, 214 Ga. App. 614, 619 (5) (448 SE2d 471) (1994).

[19] *Hortman*, supra.

[20] *Robinson v. State*, 231 Ga. App. 368, 370 (3) (498 SE2d 579) (1998) ("Where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based in part on the other's findings") (punctuation omitted).

support the verdicts against them. In reviewing such a challenge, we view the evidence in the light most favorable to support the verdict, and the defendants no longer enjoy a presumption of innocence.[21] So viewed, the evidence was more than ample to sustain the verdicts against Bellamy and Lewis both for trafficking in methamphetamine and possession of methamphetamine.[22]

5. In their final enumeration of error, Bellamy and Lewis argue that the trial court erred in failing to merge the trafficking count with the possession count. Under OCGA § 16-1-7 (a) (1), offenses may merge either as a matter of law or as a matter of fact. "The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts."[23] Here, the evidence demonstrated that, in addition to the 139.5 grams of methamphetamine, the defendants also had a jar filled with liquid that tested positive for methamphetamine. The liquid, which was never weighed, constituted a separate amount of methamphetamine not accounted for in the trafficking charge. The indictment for the possession charge clearly stated that the possession charge was based upon methamphetamine "separate from the quantity described" in the trafficking charge. We cannot say that the trial court, as the finder of fact, was required to find that the defendants possessed the liquid in the jar for the purpose of trafficking. Under the circumstances, we cannot say that the trial court erred in failing to merge the two offenses.[24]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

ON MOTION FOR RECONSIDERATION.

With regard to Division 1 (a) of the opinion, we found that Bellamy waived the right to appeal the trial court's denial of his motion to suppress by failing to file a written motion. On motion for reconsideration, Bellamy points to that portion of the record in which he did file such a motion, and he requests that we address the merits of his appeal on this issue. For the reasons set forth in Divisions 1 (b) and (c) of our opinion, Bellamy's claim of error lacks merit. Accordingly, the result remains the same.

*Motion for reconsideration denied.*

---

[21] *Inglett v. State*, 239 Ga. App. 524, 527 (6) (521 SE2d 241) (1999).

[22] Id.; *Snoke v. State*, 237 Ga. App. 686, 687 (1) (516 SE2d 541) (1999).

[23] *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

[24] *Timberlake v. State*, 200 Ga. App. 64, 69-70 (7) (406 SE2d 537) (1991); *Cassie v. State*, 192 Ga. App. 484, 486 (2) (385 SE2d 129) (1989).

DECIDED FEBRUARY 29, 2000 —
RECONSIDERATION DENIED APRIL 14, 2000 —

Chestney Hawkins Law Firm, Michael M. Hawkins, Guy E. Davis, Jr., for appellants.

Richard R. Read, District Attorney, Brian C. Max, Assistant District Attorney, for appellee.