**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 2, 2012**

# In the Court of Appeals of Georgia

A12A0274. ARMOUR v. THE STATE.

PHIPPS, Presiding Judge.

Following a jury trial, Sandra Armour was convicted of driving under the combined influence of marijuana and alprazolam to the extent that it was less safe for her to drive.[1] She claims on appeal that the trial court erred in (i) denying her motion to suppress, (ii) improperly commenting on the evidence, and (iii) requiring her to spend eight days in custody following sentencing, notwithstanding that she moved for a supersedeas bond pending appeal. For the reasons that follow, we find no error and affirm.

1. Armour contends that the trial court erred in denying her motion to suppress her statements, test results, and other evidence stemming from her arrest because the

---

[1] OCGA § 40-6-391 (a) (4).

arresting officer lacked probable cause to conclude that she had been driving under the influence of drugs to the extent it was less safe to drive ("DUI-less safe"). We disagree.

> In reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. However, when evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

Viewed in a light most favorably to uphold the trial court's findings and judgment, the evidence showed that Armour was driving her car on a state route when she collided with a "four wheeler," fatally injuring its driver. By the time the police officer who ultimately arrested Armour arrived at the site of the wreck, emergency and other law enforcement personnel were on the scene, and Armour had been transported to the hospital. The officer performed a quick inventory of Armour's car. After smelling the odor of burnt marijuana coming from inside the car, he spotted green,

---

[2] *Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011) (punctuation and footnotes omitted).

2

leafy particles of what appeared to be marijuana on the floorboard of the passenger's seat, and he also noticed a bottle of Xanax.

The officer traveled to the hospital, where he spoke with Armour, who was not visibly injured. He saw that her eyes were bloodshot and dilated. According to the officer, dilated pupils may indicate marijuana use. He asked Armour "about the medication and the marijuana." Armour told him that she used marijuana every evening in place of the Xanax to calm her nerves. She denied having smoked marijuana that day, but admitted to having smoked marijuana the previous evening.

At the officer's request, Armour agreed to undergo a "Romberg" field sobriety test, during which the officer looked for involuntary eye flutter and "internal clock." He concluded that Armour's internal clock was slow and that she exhibited eyelid tremors. Based on his training and experience, the officer concluded that Armour was an impaired driver and placed her under arrest. After he read Armour the implied consent warning, she agreed to a blood test, and after a nurse drew Armour's blood, the officer transported Armour to the jail.

Armour argues that the officer lacked probable cause to arrest her for DUI-less safe. We disagree. "The facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial; the test

merely requires a probability - less than a certainty but more than a mere suspicion or possibility."[3] Further, "[p]robable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction."[4]

OCGA § 40-6-391 (a) (2) provides that a person shall not drive a moving vehicle while "[u]nder the influence of any drug to the extent that it is less safe for the person to drive." A driver need not actually commit an unsafe act in order to be under the influence to the extent it is less safe to drive.[5] On the other hand, "[e]vidence which shows *only* that a defendant had [a drug] in her body while driving provides insufficient probable cause to arrest for DUI."[6] Here, the evidence showed not only the smell of burnt marijuana in Armour's car and her admission that she smoked marijuana every day, but that shortly after driving her eyes were bloodshot and her

---

[3] *Brown v. State*, 302 Ga. App. 272, 274 (1) (690 SE2d 907) (2010) (citation and punctuation omitted).

[4] *Campbell v. State*, 313 Ga. App. 436, 438 (721 SE2d 649) (2011) (citation and punctuation omitted).

[5] See *Moss v. State*, 194 Ga. App. 181, 182 (390 SE2d 268) (1990).

[6] *Handley v. State*, 294 Ga. App. 236, 237 (668 SE2d 855) (2008) (citation and punctuation omitted; emphasis in original).

pupils dilated.[7] In addition, the arresting officer made the determination, based on his training and experience,[8] that Armour was an impaired driver only after evaluating her performance on a field sobriety test.[9] Under the totality of circumstances, there was

---

[7] See, e. g., *Martin v. State*, 214 Ga. App. 614, 616 (1) (448 SE2d 471) (1994) (circumstances giving officer probable cause to arrest for driving under the influence of drugs or alcohol included defendant's dilated eyes and inability to explain how the accident occurred); *Slayton v. State*, 281 Ga. App. 650, 652 (1) (637 SE2d 67) (2006) (observations about suspect's physical appearance, demeanor or behavior can support a finding of impairment.).

[8] See *Wilson v. State*, 308 Ga. App. 383, 385 (2) (a) (708 SE2d 14) (2011) ("[a] witness who satisfactorily shows that he had opportunity to observe, and did observe, the condition of another, may testify whether that person was under the influence of intoxicants and the extent thereof, stating the facts upon which the opinion is based") (citation omitted); *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994) ("[a] police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether appellant was under the influence to the extent it made him less safe to drive") (citations omitted).

[9] See *Parker v. State*, 307 Ga. App. 61, 66 (4) (704 SE2d 438) (2010) (circumstances which showed probable cause for a DUI violation included appellant's performance on field sobriety tests).

probable cause for the officer to arrest Armour for DUI-less safe.[10] It follows that the trial court did not err in denying Armour's motion to suppress.

2. Armour contends that the trial court erred by improperly commenting on the evidence in the presence of the jury. We disagree.

At trial, the jury heard testimony of a second police officer who evaluated Armour after she had been transported by the arresting officer to the jail. During defense counsel's cross-examination of the second officer, counsel began a question, "was the fact that [Armour] was at a hospital waiting for treatment, had not received treatment--" but before he could finish, the prosecutor objected that no evidence had been presented that Armour did not receive the treatment that she needed or that she was waiting for treatment. The defense counsel responded to the prosecutor's objection by stating his own recollection of the evidence. In ruling on the prosecutor's objection, the trial court stated:

---

[10] See *Campbell*, supra (probable cause existed for appellant's arrest for DUI-less safe where he "was observed speeding, admitted to smoking marijuana, had the smell of marijuana on his person, had bloodshot eyes, and exhibited multiple clues of impairment during several of the field sobriety tests"); *Davis v. State*, 302 Ga. App. 144, 146-147 (690 SE2d 464) (2010) (appellant's "poor performance on the field sobriety tests and his physical manifestations of drug influence gave the officer probable cause to arrest [him] for DUI"); *Slayton*, supra.

6

My recollection of the evidence was that [the arresting officer] obtained authorization from the nurse to segregate [Armour] from the other witnesses and before he removed her from the hospital, there was inquiry with this nurse after she had administered– had withdrawn the blood about whether or not she could be released is my recollection of the testimony. Whether that is erroneous or not, we can certainly play back the tape, if you wish . . . but based on my recollection . . . I would sustain the objection that's been made . . . .

Armour argues that the trial court's statements violate the rule that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[11] But a judge's remarks assigning a reason for a ruling do not generally constitute an impermissible expression of opinion or a comment on the evidence.[12] Further, "a correct statement by the court as to the testimony of a witness is not error in the absence of special circumstances tending to show such an unwarranted emphasis upon certain testimony as might confuse or prejudice the

---

[11] OCGA § 17-8-57.

[12] See *Bolden v. State*, 281 Ga. App. 258, 260 (2) (636 SE2d 29) (2006); *Williams v. State*, 244 Ga. App. 692, 696 (3) (536 SE2d 572) (2000).

7

jurors."[13] Here, the trial court's remarks were a correct statement as to the testimony of a witness and were directed to counsel as an explanation for its ruling on the state's objection. Under these circumstances, we find no error.[14]

3. Last, Armour claims that the trial court erred in failing to immediately set an appeal bond, thereby requiring her to spend eight days in custody, notwithstanding that immediately following sentencing she filed a motion for new trial and moved for a supersedeas bond pending appeal.[15] Because Armour's motion for an appeal bond was granted following a motion hearing and her judgment of conviction has been

---

[13] *Bolden*, supra (citation and punctuation omitted). See *Saladine v. State*, 169 Ga. App. 425 (1) (313 SE2d 714) (1984).

[14] See *Bolden*, supra; *Saladine*, supra.

[15] Armour was convicted on February 24, 2010, and her motion for supersedeas bond was granted on March 4, 2010.

affirmed, even if we found that the trial court erred in not immediately setting an appeal bond,[16] there would be no benefit to Armour, and her claim of error is moot.[17]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[16] We note that Armour misplaces her reliance on OCGA § 17-6-1 (b) (1), which provides, among other things, that a person shall not be refused bail during an appeal of a misdemeanor conviction. OCGA § 17-6-1 (b) (1) is subject to OCGA § 17-6-1 (g), which provides in applicable part that "[t]he granting of an appeal bond to a person who has been convicted of . . . any offense set forth in Code Section 40-6-391, shall be in the discretion of the convicting court."

[17] See *Clark v. State*, 301 Ga. App. 354, 355 (687 SE2d 593) (2009) ("the general rule is that if defendant would receive no benefit by reversal of the case, it is moot") (citation, punctuation, and footnote omitted); *Davis v. State*, 164 Ga. App. 633, 637 (7) (298 SE2d 615) (1982).