**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A1399. THE STATE v. HUGHES.

RAY, Judge.

The State appeals from the trial court's grant of Jack Hughes' motion to suppress the results of a blood test, contending that the trial court erred in concluding that the arresting officers lacked probable cause to request the blood test under the implied consent statute. For the following reasons, we reverse.

Upon review of a trial court's grant or denial of a motion to suppress, we apply the clearly erroneous standard where the evidence is in dispute or the credibility of a witness is challenged, and

> [the trial court's] findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be

accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and footnote omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010). However, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Footnote omitted.) *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008), quoting *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994); (Punctuation and footnote omitted.) *State v. Preston*, 293 Ga. App. 94, 96 (666 SE2d 417) (2008), quoting *Vansant*, supra.

Here, the evidence adduced at the hearing on the motion to suppress shows that, on the morning of June 27, 2011, officers from the Columbus Police Department were dispatched to a motor-vehicle accident. Hughes, then 17 years old, had driven through a red-light and struck another driver before ultimately hitting a utility pole. The airbag in Hughes's vehicle had deployed during the accident, filling the cabin of

his pickup truck with a white powder. The driver of the other vehicle died as a result of injuries sustained in the collision.[1]

After the accident, one of the first responding officers, Officer Allen, saw Hughes standing off to the side of his vehicle and made contact with Hughes to determine if he was okay. Hughes said that he was okay, and he told Officer Allen that he believed he had fallen asleep while driving. Officer Allen observed that Hughes was unsteady on his feet, that his eyes were red and glassy with dilated pupils, and that he was slow and evasive in his responses to questioning.

Shortly thereafter, Corporal T. R. Greene arrived at the scene and took over the investigation. While speaking with Hughes, Corporal Greene also observed that Hughes was slow to answer questions, that he was unsteady on his feet, and that he seemed to have trouble staying awake. Hughes stated that he had had a long day before the accident, which started out with an early morning practice and a baseball game that ended at 11 a.m., followed by work from 12 p.m. to 4 p.m. Hughes further stated that he took a short nap after work and then went to a party with friends from about 9 p.m. to 3 a.m., then slept in his vehicle from about 3 a.m. to 5 a.m. Hughes

---

[1] The fact that Hughes was driving and caused a wreck leading to a fatality was not in dispute on the motion to suppress.

admitted that there was alcohol present at the party, but he denied consuming any. When questioned about what had happened in the accident, Hughes stated that he had hit a telephone pole; he was unaware that he had struck another vehicle.

At this point, Corporal Greene did not believe that Hughes was under the influence, and Hughes was not asked to perform any field sobriety tests. Corporal Greene arrested Hughes for a red-light violation and homicide by vehicle. However, after providing *Miranda*[2] warnings to Hughes, Corporal Greene and another officer performed a search of his person incident to arrest. During this search, the officers found socks in Hughes's pockets that contained several pills.[3] There was no evidence that Hughes was asked to identify the pills or asked whether he had recently ingested any of them. Corporal Greene suspected that some of the pills were Ecstacy and, when taking into consideration his earlier observations of Hughes's demeanor and appearance, he believed that Hughes may be under the influence of drugs. Corporal Greene then read the implied consent warning to Hughes, and Hughes submitted to a State-administered blood test.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[3] Hughes did not challenge the authority of the search incident to arrest.

Hughes filed a motion to suppress the results of the blood test, arguing that the officers lacked probable cause to believe that he was driving under the influence of drugs. At the hearing on the motion to suppress, the only witnesses who testified were the officers who responded to the scene of the accident and interacted with Hughes. Following the presentation of evidence, the trial court granted Hughes's motion to suppress, finding that the officers did not have probable cause to invoke the implied consent statute.

On appeal, the State contends that the trial court erred in granting the motion. We agree.

In determining whether the evidence is sufficient to invoke the implied consent statute, the relevant inquiry is whether an officer had "reasonable grounds" to believe that a defendant had been driving a motor vehicle in violation of OCGA § 40-6-391. See OCGA § 40-5-55 (a). "[W]here the facts relevant to a suppression motion are undisputed, the proper standard of review on appeal is de novo, not clearly erroneous." (Footnote omitted.) *Underwood*, supra.

In *State v. Gray*, 267 Ga. App. 753 (600 SE2d 626) (2004), the case relied upon by the trial court in granting Hughes's motion to suppress, we applied the clearly erroneous standard to affirm the trial court's grant of a motion to suppress the results

of the defendant's breath test where the trial court found that the arresting officer lacked credibility and that the defendant's outward manifestations were the result of the automobile accident, rather than impairment caused by intoxication. Id. at 754-755 (1). In that case, the trial court found that the defendant had adequately demonstrated that another driver had caused the accident, and that the mere presence of alcohol in the defendant's body did not warrant a finding of probable cause to arrest the defendant for driving under the influence because there was no evidence to indicate that the defendant was under the influence of alcohol to a degree which rendered her incapable of driving safely. Id. at 756 (2). The facts in *Gray* are distinguishable from those presented in this case.

Here, the fact that Hughes had drugs in his possession was not the only credible evidence that he may have been driving while impaired. The undisputed evidence also showed that Hughes was incapable of driving his vehicle safely and that he exhibited manifestations consistent with being impaired. The fact that drugs were found in his possession put into context his disjointed demeanor, and the combination of these facts provided the officers with a reasonable basis for believing that Hughes was driving under the influence. Although the officers did not perform any field sobriety

6

testing, based upon the totality of the circumstances the officers reasonably believed that drugs may have been involved, and they asked Hughes to submit to a blood test.

Although the trial judge, as the trier of fact on the motion to suppress, was not obligated to believe the officers' uncontradicted testimony regarding their observations of Hughes's demeanor and appearance,[4] the trial court's order neither made any specific findings about the officers' credibility nor rejected the officers' testimony as to any of the above facts. Rather, the trial court found that Hughes's manifestations "were consistent with the after-effects of an automobile collision where an airbag deployed[.]" Hughes contends that the trial court's findings should be reviewed under the clearly erroneous standard, which would mean that the ruling of the trial court must be upheld if there is any evidence to support it. See *Gray*, supra. We disagree. The trial court found that the facts were entirely consistent with everything to which the officers testified, except for their subjective belief that probable cause existed to request a blood test. This latter point represents not a fact of the event, but rather a legal conclusion reached by the trial court upon its

---

[4] See *Brown v. State*, ___ Ga. ___ (Case No. S12G1287, decided October 21, 2013) ("The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony.") (citation and punctuation omitted).

consideration of the undisputed facts. As the facts relevant to the motion to suppress are undisputed, the proper standard of review is de novo. See *Underwood*, supra; *Vansant*, supra; and *Preston*, supra.

The proper inquiry is whether the investigating officers, in light of all the facts and circumstances confronting them on the scene at that time, had a reasonable and objective basis for suspecting that Hughes was under the influence of a drug that contributed to the collision. See *Preston*, supra at 97, n. 13. The fact that there may be other explanations for Hughes's unusual behavior and manifestations does not establish that the officers' beliefs were unreasonable or that they lacked credibility. It is well settled that

> [t]he facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial; the test merely requires a probability — less than a certainty but more than a mere suspicion or possibility. Further, probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction.

(Punctuation and footnotes omitted.) *Armour v. State*, 315 Ga. App. 745, 746 (1) (728 SE2d 270) (2012). The trial court's "finding" that Hughes's physical manifestations were consistent with the after-effects of the accident is not a fact that is central to

8

whether the police officers had probable cause to ask for a drug test, but rather represents the trial court's conclusion as to whether it could be proven that Hughes was in fact impaired. Ultimately, that decision is what the jury should be empaneled to decide in this case. The trial court's inquiry should be limited simply to whether the police officers had reasonable grounds to believe that drugs were likely involved.

Here, the undisputed evidence shows that the officers had a reasonable and objective basis for believing that Hughes had been driving in violation of OCGA § 40-6-391. Hughes ran a red light and struck another vehicle, killing the other driver. He exhibited several signs of impairment, was wholly unaware of the collision that he had caused, had slept in his vehicle for a while after leaving a party where alcohol had been served, and, most importantly, had drugs in his possession. See *Martin v. State*, 214 Ga. App. 614, 615-616 (1) (448 SE2d 471) (1994) (circumstances giving officer probable cause to arrest for driving under the influence of drugs or alcohol included defendant's dilated eyes and inability to explain how the accident occurred); *Slayton v. State*, 281 Ga. App. 650, 652 (1) (637 SE2d 67) (2006) (observations about suspect's physical appearance, demeanor, behavior, and manner of driving can support a finding of impairment). Furthermore, the officers' failure to conduct field sobriety testing in this case does not demand a finding that the officers lacked

9

probable cause to request a blood test. "What matters is what the [officers] observed and reasonably believed." *Brown v. State*, 302 Ga. App. 272, 274 (1) (690 SE2d 907) (2010) (evidence was sufficient to establish probable cause to arrest for driving under the influence, even in the absence of field sobriety testing, where defendant otherwise exhibited signs of intoxication and marijuana was found in defendant's possession).

Under the totality of the circumstances, when viewed objectively from the standpoint of the officers at the time, we find that the facts were sufficient to give the officers probable cause upon which to request a blood test under the implied consent statute, regardless of whether a jury might later disagree with their suspicions as to why the collision occurred. See, e.g., id. at 273-274 (1); *Preston*, supra at 95-97. Accordingly, the trial court's ruling must be reversed.

*Judgment reversed. Andrews, P. J., Dillard, Ray, and McMillian, JJ., concur. Barnes, P. J., Doyle, P. J., and Miller, J., dissent.*

A13A1399.  THE STATE v. HUGHES.

MILLER, Judge, dissenting.

I respectfully dissent because the majority has failed to apply the proper standard of review.  In this case, after hearing all of the evidence and assessing the credibility of the police officers who testified at the suppression hearing, the court ruled that the officers lacked probable cause to believe Hughes was driving under the influence of drugs. In reversing the trial court's conclusion, the majority ignores well-established rules of appellate review and improperly substitutes its judgment for that of the trial court.

The Georgia Supreme Court has recently reiterated the three fundamental principles that must be followed when reviewing a trial court's ruling on a motion to suppress. See *Brown v. State*, __ Ga. ___, *13-14 (3) (b) (2) (Case No. S12G1287, decided Oct. 21, 2013).

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts.  The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them.  Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most

favorably to the upholding of the trial court's findings and judgment. These principles apply *equally* whether the trial court ruled in favor of the State or the defendant.

(Citation and punctuation omitted; emphasis supplied.) Id. at * 12-13 (3) (b) (2).  In *Brown,* the Supreme Court overturned this Court's decision in *State v. Brown*, 315 Ga. App. 154 (726 SE2d 654) (2012), concluding that this Court deviated from these fundamental principles by going beyond the trial court's findings of fact, conducting a de novo review, and failing to realize that the trial court, as the trier of fact, "is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. Thus, a rational trier of fact can choose to reject even 'undisputed' testimony." (Citation and punctuation omitted.) Id. at *14 (3) (b) (2).  Even though the Supreme Court reiterated the fundamental principles of appellate review on a motion to suppress, they are disregarded by the majority.

Clearly, judges on this Court may have decided the case differently had they been sitting as the trier of fact at the suppression hearing.  Appellate review, however, requires a different approach. As discussed in more detail below, this case presents issues of credibility and conflicting evidence as to the cause of the alleged indicia of impairment.  As a result, a clearly erroneous standard applies. See *Miller v. State*, 288 Ga. 286, 290 (2) (702 SE2d 888) (2010); *State v. Gray*, 267 Ga. App. 753, 753-754

2

(600 SE2d 626) (2004).  The majority here concludes that a de novo standard applies, but in doing so, the majority fails to limit its review to the facts as found by the trial court in its order.  To properly review a trial court's order on a motion to suppress, "we must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact." (Emphasis in original) *Miller*, supra, 288 Ga. at 287 (1). The trial court's verbatim factual findings are as follows:

> None of the officers who testified at the [suppression] hearing performed any field sobriety tests to determine if Defendant was impaired by drugs or alcohol, and it appears as if no other officer did so.

> There was *no indication* that either vehicle contained evidence of the recent ingestion of any intoxicants.  The officers testified that during their investigation, Defendant told them he must have fallen asleep before the accident.  The officers stated that Defendant did appear to be "trying to fall asleep;" had glassy eyes with some redness; and *may* have been unsteady on his feet.

> After arresting Defendant for homicide by vehicle in the second degree and running a red light, two of the officers searched his clothing and found some tightly packaged pills, which they could not immediately identify.  At that point one of the officers read the implied consent warning to Defendant. *This same officer testified that he did not have any reason to read the implied consent warning prior to discovering the pills.*

> . . .

> This Court has carefully reviewed the testimony of each of the three police officers who testified at the motion [to suppress] hearing,

3

and recognizing this case is very fact specific, finds, based on the totality of the circumstances, the police did not have probable cause to invoke the implied consent statute following the arrest and search of Defendant on June 27, 2011. This Court is cognizant of the fact that the officers testified that Defendant Hughes had glassy eyes with some redness and may have been unsteady on his feet. However, the decision not to conduct any field sobriety tests or otherwise investigate a possible DUI charge prior to the discovery of the pills supports a finding that the officers did not suspect that Defendant was driving under the influence of any intoxicant beforehand. Additionally, there was no evidence of any drugs or alcohol in Defendant's system when the officers read the implied consent warning. Merely finding these drugs, without any evidence of recent consumption, may furnish an officer with a hunch or suspicion, but not probable cause that withstands constitutional scrutiny. If the mere presence of alcohol inside a person's body does not furnish probable cause for a DUI arrest as held by the appellate courts of this State, the mere presence of drugs in Defendant's pockets must also fall short. Accordingly, this Court finds that Defendant's manifestations were consistent with the after-effects of an automobile collision where an airbag deployed and concludes that these manifestations did not provide the officers with probable cause to invoke the implied consent statute.

(Emphasis supplied.)

Reading the entire order, as we must, and in consideration of the trial court's statements at the suppression hearing, it cannot seriously be contended that the trial court, as the trier of fact, accepted all of the officers' testimony. Specifically, although the trial court noted that the officers collectively testified that Hughes appeared to be "trying to fall asleep," had glassy eyes with some redness, and seemed

4

unsteady on his feet, the trial court called this testimony into question when it expressly noted that despite these apparent indicators, none of the officers elected to perform a field sobriety test. The trial court expressed doubt about the existence of probable cause when it noted that Corporal Green "testified that he did not have any reason to read the implied consent warning prior to discovering the pills." Additionally, at the suppression hearing, the trial court questioned Corporal Green's credibility when it made special note of his testimony that he believed that Hughes was under the influence of mind-altering stimulants. Corporal Green's opinion was inconsistent with his testimony that Hughes was sleepy and slow to respond because stimulants would cause agitation. See *Tate*, supra, 264 Ga. at 56 (3), n.5 (contradictory or inconsistent statements can lead a finder of fact to disregard an officer's testimony); *State v. Starks*, 281 Ga. App. 15, 16-17 (635 SE2d 327) (2006).

Despite the trial court's order showing that it questioned the officers' testimony, the majority incorrectly concludes that there were no disputed issues of fact or issues of credibility because the trial court did not make an explicit credibility determination. Such explicit findings are not required, however. See, e.g., *Miller*, supra, 288 Ga. at 290 (2) (given the trial court's ultimate ruling to grant a motion to suppress, it was logical that the trial court discredited and rejected the officers'

5

testimony); *Tate*, supra, 264 Ga. at 57 (3) ("We conclude that from reading the entire order that the trial court chose not to believe the deputy's testimony. . ."); *Barnett v. State*, 204 Ga. App. 491, 492 (1) (420 SE2d 43) (1992) ("The trial court perforce of its ruling on the suppression motion found [the officer's] testimony credible . . ."). Rather than defer to the trial court's resolution of the credibility issues raised in this case, the majority imposes a credibility determination not made by the trial court – that the officers were credible and, therefore, their testimony must be accepted as fact.

Applying the proper standard of review, and viewing the evidence in the light most favorable to the trial court's ruling, the evidence supports the trial court's conclusion that the police officers lacked probable cause to believe that Hughes was driving under the influence. Notably, evidence shows that Hughes was sleep-deprived, and he specifically told officers that he had fallen asleep at the wheel before striking the other driver. Corporal Green testified that Hughes appeared to be falling asleep after the accident. Additionally, Corporal Green testified that the substantial force with which airbags deploy and hit a driver may have caused Hughes to become unsteady on his feet. Officer Allen and Corporal Green both testified that the white powder released upon airbag deployment could have affected or irritated Hughes's

6

eyes. Moreover, despite the alleged indicia of impairment and despite having received training in how to detect whether a person was under the influence of drugs, none of the officers conducted a field sobriety test or otherwise investigated a possible DUI charge prior to the discovery of the pills on Hughes. Corporal Green specifically stated that he had *no reason* to read the implied consent notice until he found the pills, which demonstrated a lack of suspicion that Hughes was under the influence of drugs or alcohol. There was no evidence that Hughes had recently ingested the pills, and, in any case, the presence of the drugs, alone, does not establish probable cause. See *Armour v. State*, 315 Ga. App. 745, 747 (1) (728 SE2d 270) (2012) (the presence of drugs in a driver's body does not, by itself, establish probable cause).

Although the State and the majority cite to evidence that Hughes exhibited several indicators of impairment, these factors *do not demand* a finding of impairment. See *Damato*, supra, 302 Ga. App. at 183 (1); cf. *State v. Goode*, 298 Ga. App. 749, 752 (681 SE2d 199) (2009) (defendant's strong odor of alcohol, glassy and watery eyes, admission to drinking, and positive alco-sensor tests did not require a finding of impairment). Additionally, although Corporal Green opined that Hughes was under the influence of drugs because he exhibited symptoms that were consistent with people under the influence, the trial court, as the trier of fact, "may accept part

7

of a witness' testimony and reject another part, and *in the absence of evidence of record demanding a finding contrary to the judge's determination*, the appellate court will not reverse the ruling sustaining a motion to suppress." (Citation and punctuation omitted; emphasis supplied.) *Anderson v. State*, 267 Ga. 116, 118-119 (2) (475 SE2d 629) (1996); see also *State v. Damato*, 302 Ga. App. 181, 183 (1) (690 SE2d 478) (2010) (the trier of fact is not bound by an officer's opinion, even if it is uncontradicted).

The trial court could have drawn an inference that Hughes was under the influence of drugs or alcohol. Presented with the officers' testimony and evaluating their credibility, however, the trial court declined to make this inference.

> The principles of appellate review applicable to these motions were set forth to ensure that, in difficult cases such as this one, the trial court's resolution of these issues would be given deference, as only the trial court actually sees the witnesses and hears their testimony.

*Miller*, supra, 288 Ga. at 290 (2). In applying the fundamental principles of appellate review, the evidence *does not demand* a finding contrary to the trial court's determinations that the alleged indicia of impairment were consistent with the after-effects of a serious accident, as opposed to being consistent with signs of a person under the influence of drugs. See, e.g., *Gray*, supra, 267 Ga. App. at 756 (2) (although

8

the evidence was conflicting as to the cause of the alleged indicia of impairment, this Court affirmed the trial court's grant of a motion to suppress because the trial court found the alleged indicia of impairment were either caused by the accident or lacked credibility, and there was another explanation for the cause of the accident). Viewing the evidence in the light most favorable to the trial court's ruling, there is evidence to support the court's conclusion that the police officers lacked probable cause. Accordingly, I would affirm the grant of Hughes's motion to suppress.

I am authorized to state that Barnes, P. J., and Doyle, P. J., join in this dissent.

A13A1399. THE STATE v. HUGHES.

BARNES, Presiding Judge, dissenting.

While I fully join Judge Miller's dissent, I write separately to further emphasize the deferential standard of review that we must apply in this case. In the context of a trial court's grant or denial of a motion to suppress, if "the underlying facts support conflicting inferences as to whether the defendant was an impaired driver, we apply a clearly erroneous standard of review and defer to the trial court's finding on the issue." (Citation and punctuation omitted.) *State v. Encinas*, 302 Ga. App. 334, 336 (691 SE2d 257) (2010). See *Slayton v. State*, 281 Ga. App. 650, 653 (1) (637 SE2d 67) (2006) (standard of review may require this Court to affirm the trial court's grant or denial of a motion to suppress "under the same facts depending on the credibility determinations and inferences drawn by the trial court") (citation omitted). This follows from the longstanding principle that "as an appellate court for the correction of legal errors, we must draw all reasonably permissible inferences from the evidence to support the trial court's ruling." (Citation and punctuation omitted.) *Slayton*, 281 Ga. App. at 653 (1).

Here, the underlying facts clearly would have supported an inference by the trial court that Hughes was impaired by illegal drugs when he caused the automobile

accident, and thus would have supported the denial of the motion to suppress. Indeed, members of this Court might very well have drawn such an inference if we had been sitting as the trier of fact at the suppression hearing. Nevertheless, the underlying facts also support a competing inference that Hughes was *not* impaired by illegal drugs when he caused the automobile accident, as the trial court found in this case. Under these circumstances, where conflicting inferences as to whether Hughes was impaired by drugs could be drawn from the record, we should defer to the trial court's finding on the issue and affirm the grant of the motion to suppress.

I am authorized to state that Doyle, P.J., joins in this dissent.