296 Ga. 744
FINAL COPY


S14G0622. HUGHES v. THE STATE.


BLACKWELL, Justice.

Under OCGA § 40-5-55 (a), a law enforcement officer may insist that a

driver involved in a traffic accident resulting in serious injuries or fatalities

submit to a test of his blood for the presence of alcohol and drugs, so long as the

officer has probable cause to believe that the driver was driving under the

influence of alcohol or drugs.[1] Hough v. State, 279 Ga. 711, 713 (1) (a) (620

---

[1] In relevant part, the statute provides:
. . . [A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent . . . to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug . . . if such person is involved in any traffic accident resulting in serious injuries or fatalities. . . .

OCGA § 40-5-55 (a). The statute itself says nothing about probable cause. This Court has held, however, that requiring a driver involved in an accident resulting in serious injuries or fatalities to submit to such tests in the absence of probable cause would subject the driver to an unreasonable search and seizure, at least in some cases. See Cooper v. State, 277 Ga. 282, 291 (V) (587 SE2d 605) (2003) ("[T]o the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities regardless of any determination of probable cause, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions."). Accordingly, we have construed the statute to require probable cause. See Hough v. State, 279 Ga. 711, 713-714 (1) (a) (620 SE2d 380) (2005) ("[W]here an individual has been

SE2d 380) (2005). Following a fatal accident in June 2011, officers insisted that Jack Hughes — the driver of a vehicle involved in that accident — submit to a blood test. Hughes did so, but he later was indicted for several crimes in connection with the accident,[2] and he then moved to suppress the results of the blood test, asserting that the officers were without probable cause to believe that he had been driving under the influence. The trial court granted his motion, and the State appealed. In State v. Hughes, 325 Ga. App. 429 (750 SE2d 789) (2013), the Court of Appeals reversed, although three of its judges dissented. We issued a writ of certiorari to review the decision of the Court of Appeals, and although we find that the Court of Appeals applied the wrong standard of review, we conclude that it nevertheless reached the right result. Accordingly, we affirm the judgment of the Court of Appeals.

---

involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in Cooper are no longer present, and the ensuing search is both warranted and constitutional." (Emphasis in original)).

[2] More specifically, Hughes was charged by indictment with five counts of vehicular homicide in the first degree, four premised on allegations that Hughes was driving under the influence of alcohol or various drugs, and one premised on an allegation that he was driving recklessly. Hughes also was charged with three violations of the Georgia Controlled Substances Act.

1. We start with the standard of review. As the trial court considered the motion to suppress, it heard from three law enforcement officers, each of whom testified about the things he saw and heard at the scene of the accident, things that eventually led the officers to insist that Hughes submit to a blood test. Hughes presented no evidence of his own at the evidentiary hearing, although his lawyers did subject the officers to cross-examination. In its order granting the motion to suppress, the trial court expressly made findings about many — but not all — of the facts to which the officers had testified. By these findings, the trial court accepted several facts to which the officers had testified, including that they observed at the scene of the accident that Hughes seemed drowsy, that he may have been unsteady on his feet, that his eyes were red and glassy, and that he had a number of pills on his person. The trial court did not expressly reject any fact to which the officers had testified, and the trial court made no explicit findings about their credibility. Nevertheless, there were facts to which the officers had testified about which the trial court said nothing at all. For instance, one officer testified that Hughes had dilated pupils, but the trial court did not mention dilation in its order. Likewise, one officer testified that Hughes

was hesitant in response to questions from the officers, but the trial court said nothing in its order about hesitation or evasiveness.

On appeal, a majority of the Court of Appeals declined to limit its analysis to the facts expressly found by the trial court, and the majority undertook instead to decide for itself what additional facts might be gleaned from the evidentiary record. See Hughes, 325 Ga. App. at 430-431. The majority did so, it explained, because the testimony of the officers about such additional facts was not disputed by any affirmative evidence to the contrary, and the trial court had not explicitly rejected those additional facts. See id. at 432. The majority admitted that the trial court would have been entitled to reject the testimony of the officers on credibility grounds, even in the absence of other evidence contradicting their testimony, but the majority noted that the trial court had said nothing in its order about credibility. See id. In separate dissents, Judge Miller and Presiding Judge Barnes argued that the majority had not been deferential enough to the prerogative of the trial court to find the disputed facts on a motion

to suppress.[3] See id. at 434-435 (Miller, J., dissenting); id. at 439 (Barnes, P. J., dissenting). About the standard of review, the dissenting judges were right.

When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. See Tate v. State, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) ("[W]hen a motion to suppress is heard by the trial judge, that judge sits as the trier of facts."). This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts.[4] First, an appellate court generally must accept those findings

---

[3] Presiding Judge Barnes joined the dissent of Judge Miller, and Presiding Judge Doyle joined both of their dissents.

[4] These corollaries apply to the extent that the material facts are disputed. In some cases, some or all of the material facts may be undisputed, as where the defendant concedes a fact unhelpful to his cause in his motion to suppress, where the State admits a fact unhelpful to its case in connection with the motion, or where the State and defendant expressly stipulate to a fact. In such cases, an appellate court properly may take notice of the undisputed facts — even if the trial court did not — without interfering with the prerogative of the trial court to resolve disputes of material fact. Cf. Barrett v. State, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011) ("In this Court's review of a trial court's grant or denial of a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." (Citation omitted)).

5

unless they are clearly erroneous.[5] State v. Hargis, 294 Ga. 818, 823 (2), n. 12 (756 SE2d 529) (2014). Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. Brown v. State, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013). And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.[6] See Miller v. State, 288 Ga. 286, 287 (1) (702 SE2d 888) (2010) ("[W]e must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact." (Emphasis in original)).

The approach employed in this case by the majority of the Court of Appeals is inconsistent with the second and third corollaries. Although the majority accepted the express findings of the trial court, it supplemented those findings with additional findings of its own, and as it searched the record for

---

[5] We have held that less deference to the trial court is owed to the extent that material facts definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility. See, e.g., Vergara v. State, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008) (to the extent that material facts could be discerned by appellate court from video recording, no deference to findings of trial court was required).

[6] If the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings. See, e.g., Bryant v. State, 268 Ga. 664, 666-667 (6) (492 SE2d 868) (1997) (in context of motion to suppress statement, discussing importance of findings of fact and possibility of remand).

6

additional facts to find, the majority failed to view the record in the light most favorable to the findings and judgment of the trial court. For instance, the majority found that Hughes had dilated pupils and was evasive in his responses to questions from the officers, even though the trial court said nothing about such things in its order. See Hughes, 325 Ga. App. at 430. We do not know — and the majority of the Court of Appeals could not have known — exactly why the trial court said nothing about these things. But we do know that the trial court *could* have assigned no weight at all to the testimony of the officers about these things to the extent that it found that their testimony was not credible.[7] See Tate, 264 Ga. at 56 (3) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (Citation omitted)). We usually assume that trial judges have done their job, and especially where, as here, the trial court has made extensive findings of fact, we

_____

[7] We note that the testimony about dilation was the subject of cross-examination about the extent to which lighting conditions would have permitted the officers to observe any dilation. We note as well that the testimony about Hughes responding to questions in a hesitant way was rather conclusory.

7

generally must presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact, especially where there were grounds upon which the trial court properly *could* have assigned no weight to such evidence. The majority of the Court of Appeals failed to indulge such a presumption, and by so failing, it went astray in its analysis.

2. Limiting our consideration of the disputed facts to those found expressly by the trial court, we conclude that the majority of the Court of Appeals reached the right result, notwithstanding its misapplication of the standard of review. In its order, the trial court found these material facts:

- Hughes was one of two drivers involved in an accident;

- The other driver died of injuries sustained in the accident;

- Officers responded to the scene of the accident around 5:30 on the morning of June 27, 2011;

- No officer conducted field sobriety tests to ascertain whether Hughes was under the influence of alcohol or drugs;

- The officers observed that Hughes appeared to be sleepy, had "glassy eyes with some redness," and "may have been unsteady on his feet";

8

- The officers arrested Hughes at the scene for running a red light and vehicular homicide in the second degree;

- Upon arresting Hughes for those offenses, the officers searched his person and found "some tightly packaged pills, which they could not immediately identify"; and

- Following the discovery of these pills, an officer read the implied consent warning to Hughes.

For purposes of this appeal, we accept that these findings of fact are supported by the evidence and not, therefore, clearly erroneous. Because Hughes conceded in connection with his motion to suppress that the officers had probable cause to arrest him at the scene for running a red light and vehicular homicide in the second degree, we also accept — as facts necessarily implied by that concession of probable cause and, therefore, undisputed for purposes of the motion to suppress — that the officers knew as a result of their investigation that Hughes probably had driven through a red light and thereby caused the accident in which another driver sustained fatal injuries. See note 4, supra. Altogether, the undisputed facts and the disputed facts found by the trial court establish that the officers in this case had probable cause to believe that Hughes had been driving under the influence of drugs.

As the United States Supreme Court has explained, "probable cause" means:

> [F]acts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

Michigan v. DeFillippo, 443 U. S. 31, 37 (99 SCt 2627, 61 LE2d 343) (1979) (citations omitted). See also Devega v. State, 286 Ga. 448, 451 (4) (b) (689 SE2d 293) (2010) ("Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense." (Citation and punctuation omitted)). So, when a court considers whether an officer had probable cause to arrest a suspect, the court must focus on the facts and circumstances then known to the officer, and it must inquire whether those facts and circumstances *could* lead a prudent person — that is, a reasonable officer — to conclude that the suspect probably has committed an offense. The facts and circumstances known to the officer must be examined altogether, for it is the totality of those facts and circumstances that matters, Maryland v. Pringle, 540 U. S. 366, 371 (124 SCt 795, 157 LE2d 769) (2003), not any one fact or

10

circumstance standing alone. See United States v. Arvizu, 534 U. S. 266, 274 (122 SCt 744, 151 LE2d 740) (2002) (rejecting a "divide-and-conquer analysis" that gives no weight to any observation by an officer that was "by itself readily susceptible to an innocent explanation").[8] Because the standard for probable cause depends on what a reasonable officer could have concluded from those facts and circumstances, the standard of probable cause is an objective one, and the subjective thinking of the actual officers in a particular case is not important.[9] See Rodriguez v. State, 295 Ga. 362, 371 (2) (b), n. 13 (761 SE2d 19) (2014) ("As the United States Supreme Court has explained, subjective intentions play no role in ordinary probable-cause Fourth Amendment analysis,

---

[8] "Although Arvizu involved the existence of reasonable suspicion to make a traffic stop rather than of probable cause to arrest, the opinion is relevant here because both standards require us to examine the totality of the circumstances." United States v. Delossantos, 536 F3d 155, 161 (II) (B), n. 5 (2nd Cir. 2008). See also United States v. Yusuf, 461 F3d 374, 390 (II) (C), n.15 (3rd Cir. 2006).

[9] That said, to the extent that the training and experience of the actual officer would have permitted a reasonable officer with the same training and experience to understand the facts and circumstances known to the officer in a unique way, the training and experience of the officer should be considered. See Ornelas v. United States, 517 U. S. 690, 700 (116 SCt 1657, 134 LE2d 911) (1996) ("[O]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists." (Citation omitted)). Such training and experience are among the "facts and circumstances" known to the actual officer, and the question is whether the same training and experience would have led a reasonable officer — in connection with all of the other facts and circumstances known to the actual officer — to conclude that the suspect probably had committed a crime. See LaFontaine v. State, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998).

11

and the constitutional reasonableness of [searches and seizures] do not depend on the actual motivations of the individual officers involved." (Citation and punctuation omitted)). See also Whren v. United States, 517 U. S. 806, 813 (II) (A) (116 SCt 1769, 135 LE2d 89) (1996). And where the totality of the facts and circumstances known to an officer would permit reasonable officers to draw differing conclusions about whether the suspect probably has committed a crime, probable cause exists, and it is for the officer — not judges, trial or appellate — to decide which of the several reasonable conclusions to draw. See Cox v. Hainey, 391 F3d 25, 32-33 (II) (C) (1st Cir. 2004) ("[T]he availability of alternative inferences does not prevent a finding of probable cause so long as the inference upon which the officer relies is reasonable. . . . Consequently, when conflicting inferences are available to resolve the issue of probable cause and both of them are plausible, it does not matter which inference is correct." (Citations and punctuation omitted)).

Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts. See Clay v. State, 290 Ga. 822, 828 (2) (725

SE2d 260) (2012). Doing so, we conclude that the officers in this case had probable cause to believe that Hughes had been driving under the influence of drugs. The officers had reason to believe that Hughes had driven through a red light and caused a fatal accident. They had reason to think — based on their observations of Hughes at the scene of the accident — that Hughes was under the influence of some intoxicant. And they knew that Hughes had a number of unknown pills on his person. Standing alone, any one of these circumstances would not be enough for a reasonable officer to conclude that Hughes probably had been driving under the influence. Indeed, each of these circumstances is susceptible of reasonable explanations other than driving under the influence, and although each circumstance is consistent with driving under the influence, an innocent explanation for each circumstance might be more probable. For instance, the running of the red light and the accident that followed could reasonably have been attributed to Hughes having been sleep deprived, especially considering the early-morning hour of the accident and that he appeared sleepy afterwards. His unsteadiness and red eyes could have been chalked up to the deployment of an air bag in the collision. And his possession of pills does not necessarily mean that Hughes had taken any. But again, we do

13

not consider any fact or circumstance standing alone. Taken together, a reasonable officer could conclude, we think, that driving under the influence was an equally or more probable explanation for the facts and circumstances known to the officers than an improbable coincidence of multiple innocent explanations. See, e.g., Walker v. City of Huntsville, 310 Fed. Appx. 335, 338 (III) (11th Cir. 2009); State v. Underwood, 283 Ga. 498, 500 (661 SE2d 529) (2008); Firsanov v. State, 270 Ga. 873, 874 (3) (513 SE2d 184) (1999).

The trial court and dissenting judges in the Court of Appeals concluded otherwise, but they misapplied the legal standard for probable cause in several ways. The trial court, for instance, seems to have attributed much significance to the fact that the officers in this case did not subjectively suspect Hughes was driving under the influence until they discovered the pills. But that the officers may have had a different view of Hughes after finding the pills is entirely unremarkable because, as the majority of the Court of Appeals put it, the discovery of the pills "put into context his disjointed demeanor." Hughes, 325 Ga. App. at 432. And more important, the subjective thinking of the actual officers is not critical. What matters is what a reasonable officer could have

14

concluded from the facts and circumstances known to the officers. See Rodriguez, 295 Ga. at 371 (2) (b), n. 13.

The trial court appears as well to have made the mistake of employing a "divide-and-conquer" approach, considering each of the several facts and circumstances known to the officers in isolation, rather than altogether. For instance, in its order, the trial court found that the manifestations of drug intoxication observed by the officers at the scene of the accident — sleepiness, unsteadiness, and glassy and red eyes — also "were consistent with the after-effects of an automobile collision where an airbag deployed." About the pills that the officers found on Hughes, the trial court said that "finding these drugs, without any evidence of recent consumption, may furnish an officer with a hunch or suspicion, but not probable cause that withstands constitutional scrutiny." We take issue with neither of these statements by the trial court. The problem is, the trial court seems to have never considered whether the manifestations observed by the officers at the scene — which were consistent with drug intoxication as well as surviving an accident in which an airbag is deployed — amounted to "evidence of recent consumption," such that the discovery of the pills would have cast those manifestations in a different light

15

in the eyes of a reasonable officer, and the manifestations would have cast the discovery of the pills in a different light. The circumstances of the accident — from which a reasonable officer could make some inferences about the condition of Hughes *before* the accident and any airbag deployment — also inform how reasonable officers might view his condition after the accident, as well as the pills found on his person. The dissenting judges at the Court of Appeals appear to have made a similar mistake. See <u>Hughes</u>, 325 Ga. App. at 438 (Miller, J., dissenting) ("[T]he presence of the drugs, *alone*, does not establish probable cause." (Emphasis supplied)). Again, courts do not look at any one circumstance alone. It is the totality of the circumstances that matters. See <u>Arvizu</u>, 534 U. S. at 274.

Finally, the trial court and the dissenting judges at the Court of Appeals all seem to have put too much weight on the notion that some of the facts and circumstances known to the officers — especially the unsteadiness, sleepiness, and glassy and red eyes that the officers observed at the scene — could have been susceptible of innocent explanations. As the majority of the Court of Appeals correctly explained, "[t]he fact that there may be other explanations for Hughes's unusual behavior and manifestations does not establish" that it would

16

have been unreasonable for an officer to draw the conclusion that Hughes probably had been driving under the influence. Hughes, 325 Ga. App. at 433. See also Illinois v. Gates, 462 U. S. 213, 243 (IV), n.13 (103 SCt 2317, 76 LE2d 527) (1983) (noting that "innocent behavior frequently will provide the basis for a showing of probable cause"); United States v. Delossantos, 536 F3d 155, 161 (II) (B) (2nd Cir. 2008) ("The fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause." (Citation and punctuation omitted)). Indeed, both of the dissenting opinions in the Court of Appeals acknowledged that one reasonably could infer from the facts and circumstances known to the officers that Hughes was driving under the influence. See Hughes, 325 Ga. App. at 438 (Miller, J., dissenting) ("The trial court could have drawn an inference that Hughes was under the influence of drugs or alcohol."); id. at 439 (Barnes, P. J., dissenting) ("Here, the underlying facts clearly would have supported an inference by the trial court that Hughes was impaired by illegal drugs when he caused the automobile accident . . . ."). Notwithstanding the reasonableness of such an inference, the dissenting judges said that they had to defer to the determination by the trial court that the facts and circumstances did *not* show that Hughes was, in fact, impaired. The problem

17

is, the trial court was not charged with determining whether Hughes was, in fact, driving under the influence. The job of the trial court was to determine whether reasonable officers could have concluded that he probably was. That is, the trial court was supposed to determine whether the officers had probable cause. The existence of probable cause is a legal question as to which the appellate courts owe no deference to trial judges. And in any event, if reasonable officers could have reached different conclusions — some concluding reasonably that Hughes probably had been driving under the influence, and others reasonably concluding otherwise — then probable cause by definition was established. See Cox, 391 F3d at 32-33 (II) (C).

For these reasons, we agree with the majority of the Court of Appeals that the facts and circumstances known to the officers were sufficient to establish probable cause, and the trial court, therefore, erred when it granted the motion to suppress. The judgment of the Court of Appeals is affirmed. To the extent that State v. Gray, 267 Ga. App. 753, 756 (2) (600 SE2d 626) (2004), State v. Goode, 298 Ga. App. 749, 750 (681 SE2d 199) (2009), and State v. Encinas,

302 Ga. App. 334, 336 (691 SE2d 257) (2010), conflict with our analysis, we disapprove those decisions.[10]

Judgment affirmed. All the Justices concur.

Decided March 16, 2015.

Certiorari to the Court of Appeals of Georgia – 325 Ga. App. 429.

Allen M. Trapp, Jr., Hagler, Jackson & Walters, Richard C. Hagler, for appellant.

Julia Fessenden Slater, District Attorney, Wesley A. Lambertus, Assistant District Attorney, for appellee.

---

[10] Gray, upon which Hughes and the trial court relied in this case, seems to have approved of the "divide-and-conquer" approach, which the United States Supreme Court has disapproved, and which we disapprove today. See 267 Ga. App. at 756 ("Finding that all alleged indicia of impairment were caused by the accident . . . and that Gray had adequately explained the accident to the officer, the trial court concluded that the only evidence of DUI was the presence of alcohol in Gray's body." (Citation omitted)). Goode and Encinas suggest that, upon a motion to suppress for lack of probable cause to believe that one was driving under the influence, the pertinent question is whether that person was, in fact, an impaired driver, such that appellate courts must defer to the inferences drawn by the trial court, rather than the inferences that a reasonable officer could have drawn. See Goode, 298 Ga. App. at 750 ("Where, as here, the underlying facts support conflicting inferences as to whether the defendant was an impaired driver, we apply a clearly erroneous standard of review and defer to the trial court's finding on the issue." (Citation omitted)); Encinas, 302 Ga. App. at 336 (same, citing Goode).