**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 18, 2025**

# In the Court of Appeals of Georgia

A25A1069. BOWDEN v. THE STATE.

RICKMAN, Presiding Judge.

Stephen Bowden was tried by a jury and convicted of one count each of family violence aggravated assault, criminal trespass, family violence simple battery, false imprisonment, and family violence simple assault, and two counts of obstruction of a police officer. On appeal, he contends that the trial court erred in denying his pretrial motion to suppress. For the reasons that follow, we affirm.

"In determining whether a trial court properly denied a motion to suppress, [appellate courts] can consider all evidence of record, including that found in pretrial, trial and post-trial proceedings." (Citation and punctuation omitted.) *Boles v. State*, 316 Ga. 209, 220 (3) (b) (887 SE2d 304) (2023). In so doing, we "must construe the

evidentiary record in the light most favorable to the trial court's factual findings and judgment." (Citation and punctuation omitted.) *Westbrook v. State*, 308 Ga. 92, 96 (2) (839 SE2d 620) (2020). In addition, we generally must accept the trial court's findings of disputed facts unless they are clearly erroneous, and also "generally must limit [our] consideration of the disputed facts to those expressly found by the trial court." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). But even though "we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." Id. at 750 (2).

Construed under the above standard, the record shows that at the motion to suppress hearing, a deputy with the Paulding County Sheriff's Office testified that he responded to a domestic dispute call on May 14, 2019. When he arrived, he made contact with the victim, who told him about prior incidents involving physical and mental abuse from Bowden, which led her to fear Bowden. She was seeking resources to try to get away from the situation but declined the deputy's offer to escort her from the property at that time. While the deputy was talking to the victim, Bowden

2

returned to the residence and the deputy attempted to talk to him and explain why he was there. Bowden then became irate, began yelling at the deputy, and stormed into the house. The victim had already gone back into the house and, based on a professed concern for her safety and in an attempt to keep the peace, the deputy followed Bowden into the house without Bowden's permission.

Bowden went into the room where the victim was located and before closing the door, turned around and threatened to have his dog attack the deputy if he entered the room. The deputy could hear a dog growling inside the room, so he waited in the living room and called additional deputies to the scene. The deputy also heard an argument inside the room and when the victim yelled, "help me," the deputy said he was "in fear for her life" and barged into the room, followed by another deputy. The deputies tried to take Bowden out of the house, but he resisted, and they ultimately had to "take him to the ground" to detain him.

Bowden moved to suppress any and all evidence obtained as a result of his detention and arrest. The trial court denied Bowden's motion to suppress based on its conclusion that the deputies' entry into the residence was justified by exigent circumstances. In its order, the trial court found that before they entered the house,

the deputies were aware that Bowden had previously mentally and physically abused the victim, that she was afraid, and that Bowden was irate and screaming obscenities as he stormed into the house after the victim.

At trial, the victim testified that she had been married to Bowden since September 2017 and that, over time, he took control of her finances, isolated her from her family and friends, and subjected her to verbal and physical abuse. On May 10, 2019, the victim attempted to leave her marriage and while packing her clothing, Bowden became verbally abusive, slapped the glasses off of her face, and threw clothes and a clothes hamper at her. When she finally made it to her car, Bowden put his hands around her neck and choked her.

On the morning of May 14, 2019, the victim called 911 to escape what she referred to as "[a] long standing pattern of violence and control over [her] life." During the call, the victim told the 911 operator that she was trying to leave her husband and needed someone to come there so that she could pack safely and leave the premises without her husband threatening her safety or damaging her vehicle. She explained that her husband was out of the house at the time but would return shortly. The deputies arrived before Bowden returned and encouraged her to leave, but she

declined because she needed her car, which Bowden had taken, and her dog. When Bowden arrived, she went inside and began packing.

The Paulding County Sheriff's Office deputies spoke to Bowden and told him that they were there for a domestic dispute. In response, Bowden became furious and using "some choice explicit words," told the deputies to get off of his property. Bowden then went into the house and attempted to shut the door in the face of one of the deputies, but they followed him inside. As he walked further into the house, Bowden continued to shout obscenities at the deputies and threatened to have his dog attack them if they proceeded any further.

Bowden then went into the bedroom where the victim had gone, closed the door, and began arguing with her. She could not leave the room because Bowden stood in between her and the door and continued to yell at her. When the victim screamed, "oh my God, please help me," the deputies went into the bedroom and grabbed Bowden. Although Bowden resisted, the deputies were ultimately able to handcuff Bowden and place him under arrest.

After he was convicted, Bowden filed a motion for new trial in which he challenged the trial court's denial of his pretrial motion to suppress. The trial court

denied the motion for new trial, reiterating its holding that the deputies had a reasonable concern for the victim's welfare and that their warrantless entry into the home was justified by exigent circumstances.

In his sole enumeration of error, Bowden contends that the trial court erred in denying his motion to suppress. He argues that the deputies violated his Fourth Amendment rights when they entered the house without a warrant or his consent.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U. S. Const. Amend. IV. This protection has been interpreted to mean that generally, law enforcement officers are prohibited from entering a home without the homeowner's consent, in the absence of a warrant allowing them to do so. *Mackay v. State*, 291 Ga. App. 733, 734-735 (662 SE2d 814) (2008). As recognized by the trial court, however, an exception to the warrant requirement exists when "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 392 (I) (98 SCt 2408, 57 LEd2d 290) (1978). "An exigent circumstance is one when an officer reasonably

believes that a warrantless entry is a necessary response on his part to an emergency situation." *Mackay*, 291 Ga. App. at 735.

Cases applying the exigent circumstances exception to the Fourth Amendment's warrant requirement can be divided into two general categories. The first category addresses those exigent circumstances police encounter in the pursuit of their traditional law enforcement duties, "i.e., their duty to enforce criminal and traffic laws and to prevent, detect, and investigate crime." *Love v. State*, 290 Ga. App. 486, 488 (659 SE2d 835) (2008). In that context, exigent circumstances include "where an officer is in hot pursuit of a fleeing felon, where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others." Id.

"The second category of cases addresses exigent circumstances encountered by police in the pursuit of their duties to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals." (Citation and punctuation omitted.) *Love*, 290 Ga. App. at 488. In these types of cases, "police do not enter a residence for the purpose of arresting or seizing evidence against an occupant; rather,

they enter in response to what they reasonably perceive as an emergency involving a threat to life or property." Id.

Bowden argues that no exigent circumstances existed when the deputies initially entered the house. He points to testimony from one of the deputies that when he arrived at the house, he did not observe any injuries to the victim or any property damage and the fact that the victim was given the opportunity to leave before Bowden arrived but declined to do so.

"Whether exigent circumstances existed is a question of fact, and we review police actions from the standpoint of a hypothetical reasonable officer and must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit." (Citation and punctuation omitted.) *Arp v. State*, 327 Ga. App. 340, 344 (2) (759 SE2d 57) (2014). Here, the trial court's denial of Bowden's motion to suppress is supported by the record evidence that the victim contacted 911 because she wanted to escape her marriage, which involved a long-standing pattern of violence and control over the victim's life, and to do so safely. The deputies were aware that Bowden had previously subjected the victim to verbal and physical abuse, observed that she was scared and

8

went into the house upon Bowden's arrival, witnessed Bowden's emotional outburst when they explained the purpose of their visit, and saw him storm into the house after the victim while continuing to hurl obscenities at the deputies. Because a reasonable officer could interpret the circumstances to be a threatening situation to the victim, we hold that the evidence authorized the warrantless entry into the residence, and the trial court did not err in denying the motion to suppress. See *Daniel v. State*, 303 Ga. App. 1, 2 (1) (692 SE2d 682) (2010).

*Judgment affirmed. Gobeil and Davis, JJ., concur.*