**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 24, 2024**

# In the Court of Appeals of Georgia

A24A0613. IN THE INTEREST OF J. T. S. S., A CHILD.

RICKMAN, Judge.

This appeal concerns J. T. S. S., a Guatemalan national, who, at age 15, came to the United States as an unaccompanied alien child,[1] was processed through the United States Office of Refugee Resettlement,[2] and was released into the care of his sister, Angelica Marisel Sica. Sica filed a non-opposed dependency petition seeking

---

[1] Under federal law, an unaccompanied alien child is one who is under the age of 18, has no lawful immigration status in the United States, and has no parent or legal guardian in the United States. See 6 USC § 279 (g) (1).

[2] The Office of Refugee Resettlement is a division of the U.S. Department of Health and Human Services charged with "coordinating and implementing the care and placement of unaccompanied alien children." 6 USC § 279 (b) (1) (A); see *Doe 4 by and through Lopez v. Shenandoah Valley Juvenile Center Comm.*, 985 F3d 327, 329 (I) (4th Cir. 2021).

to have J. T. S. S. declared dependent and requesting specific factual findings pertinent to J. T. S. S.'s anticipated application under the federal Immigration and Nationality Act to obtain Special Immigrant Juvenile ("SIJ") status in hopes of becoming a lawful permanent resident of the United States.[3] Following a deprivation hearing, the juvenile court decided that J. T. S. S. was not dependent, concluding instead that the case involved a private transfer of custody between family members over which it lacked jurisdiction, and went on to issue non-favorable factual findings related to his application for SIJ status. J. T. S. S.[4] contends that the juvenile court committed legal error in its rulings on jurisdiction and his dependency, and compounded that error by disregarding the guardian ad litem's report and issuing factual findings related to his anticipated application for SIJ status that was contrary to the evidence presented. For the following reasons, we reverse in part and vacate in part the juvenile court's order and judgment and remand the case for additional proceedings consistent with this opinion.

---

[3] See 8 USC 1101 (a) (27) (J).

[4] This appeal was filed by an attorney acting on behalf of J. T. S. S. and Sica, since Sica has not yet been appointed child's legal guardian. See OCGA § 9-11-17 (c). For ease of the opinion, we will refer to the appellant as J. T. S. S.

The record shows that J. T. S. S. was born on March 14, 2008, in an underprivileged community located in the municipality of Colomba, Department of Quetzaltenango, Guatemala, Central America. J. T. S. S. entered the United States without his parents and was placed with Sica by the Office of Refugee Resettlement. Sica petitioned the juvenile court for an order finding the child dependent, asserting that he "was born in an underprivileged village that [had] become increasingly ravaged by dangerous gangs and violence," that "his biological parents . . . deprived him of food, shelter, clothing, education, and safety," that "in the care of his parents, [his] life would continue to be in a state of deprivation and peril," and that "[he] feared for his life and had no choice but to flee Guatemala and seek refuge with [Sica]." See OCGA §§ 15–11–2 (22); 15-11-212 (a) (2) (A). Sica asked the court to appoint her legal guardian and further requested that the juvenile court make the necessary factual findings to enable the child to petition the U. S. Citizenship and Immigration Services for SIJ status pursuant to 8 U. S. C. § 1101 (a) (27) (J).

On August 25, 2023, the juvenile court conducted a hearing on the dependency petition, at which Sica was represented by counsel and the child was represented by a guardian ad litem. There was no opposing party. Sica testified at the hearing that J.

T. S. S. lives with her, her husband, and her three children in Elberton, Georgia. He has his own room in Sica's house, and Sica's husband has been supporting him financially. Sica testified that J. T. S. S. fled Guatemala because it was made dangerous by members of the Mara gangs,[5] that he had personally been threatened, and that his friends had also been threatened and one had been assaulted with a machete. Sica stated that since coming to live with her, J. T. S. S. is enrolled in high school, gets good grades, and is learning to speak English.

Sica tendered documentary evidence that included notarized statements from J. T. S. S.'s biological parents attesting that they were unable to care for the child in Guatemala and that they lacked the means to provide him with adequate food, medical care, school, or support. Additionally, Sica tendered several governmental reports detailing significant issues related to human rights and children's rights in Guatemala, and other reports related to organized gangs operating in both Guatemala specifically and Central America generally, and to unaccompanied children fleeing those Central American countries. The guardian ad litem made a brief statement to the juvenile court in which he referenced having previously submitted a report, recommended that

---

[5] The Mara Salvatrucha, or MS-13, gang and the Mara 18, or M-18, gang are the most notorious of the Central American gangs.

the court find J. T. S. S. dependent, and expressed his opinion that J. T. S. S. would also be dependent in Guatemala and that it would be harmful for him to be returned to that country. The guardian ad litem's report is not contained in the appellate record.[6]

The juvenile court issued an order in which it stated that Sica, with the consent of J. T. S. S.'s parents, accepted placement of the child by the Office of Refugee Resettlement and was capable of caring for him; therefore, the court concluded, J. T. S. S. was not dependent and that this was, in essence, a case involving the transfer of child custody over which the juvenile court lacks jurisdiction. See OCGA § 15-11-11 (granting a juvenile court concurrent jurisdiction over "[t]he issue of custody and support [only] when the issue is transferred by proper order of the superior court"). Nevertheless, the juvenile court acknowledged that Sica had requested specific findings of fact pertinent to J. T. S. S.'s anticipated application to obtain SIJ status. To that end, although the juvenile court deemed it "superfluous" to do so, the court stated that it "[could not] conclude that reunification of the child with his parents

---

[6] It appears from the hearing transcript that the guardian ad litem's report had been submitted to the juvenile court during a previously conducted hearing, a transcript of which is likewise not contained in the appellate record.

[was] not viable" and "[did] not conclude that reunification with the child's parents would be contrary to the child's welfare or best interests." The court then dismissed the petition, and this unopposed appeal followed.

Federal law provides a path to lawful permanent residency in the United States for resident alien children who qualify for SIJ status. See 8 USC § 1101 (a) (27) (J); 8 CFR § 204.11. "Congress created SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents." (Citation and punctuation omitted.) *In the Interest of J. J. X. C.*, 318 Ga. App. 420, 424 (734 SE2d 120) (2012); see *Yeboah v. United States Dept. of Justice &c.*, 345 F3d 216, 221 (III) (A) (3rd Cir.2003). To be eligible to petition the federal government for SIJ status, the resident alien must, among other things, have been under age 21 and unmarried at the time the petition was filed and have been declared dependent by a state juvenile court. See 8 USC § 1101 (a) (27) (J); 8 CFR § 204.11 (b) (1), (2); (c) (1) (i) (A). In addition, before applying for SIJ status, the resident alien must first obtain two special findings from a state juvenile court: (1) that "reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and (2) that "it

6

would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 USC § 1101 (a) (27) (J) (i), (ii); see also 8 CFR § 204.11 (c). A resident alien cannot apply for SIJ classification without first obtaining the predicate order from the juvenile court. See 8 CFR § 204.11 (d) (3); see also *In the Interest of H. D. G. H.*, 371 Ga. App. 34, 35-36 (899 SE2d 501) (2024) ("It is . . . not an exaggeration to say that the child's immigration status hangs in the balance.") (citation and punctuation omitted).

1. In two related enumeration of errors, J. T. S. S. argues that the juvenile court erred by concluding that Sica's petition was one for a transfer of custody over which it lacked jurisdiction, and then further erred by concluding that he was not a dependent child.[7] We agree.

"[T]he juvenile court shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action . . . [c]oncerning any child who

---

[7] Of course, had the juvenile court actually lacked jurisdiction, the judgment in its entirety would have been rendered void. See *Hatch v. Hatch*, 287 Ga. App. 832, 835 (2) (652 SE2d 874) (2007) ("A judgment entered by a court lacking jurisdiction is void.").

. . . [i]s alleged to be a dependent child." OCGA § 15-11-10 (1) (C). A dependent child under Georgia law includes one who "[i]s without his or her parent, guardian, or legal custodian." OCGA § 15-11-2 (22) (C).

Sica filed a petition alleging, in part, that J. T. S. S. was without a parent, guardian, or legal custodian and was, therefore, dependent. The juvenile court determined that the child was not dependent because he was living with Sica, who was capable of caring for him, and whom, having accepted placement of J. T. S. S. by the Office of Refugee Resettlement and with the consent of his parents, "now stands in loco parentis of the child. . . ."

But Sica's physical custody of J. T. S. S. does not give her the same rights and privileges as a guardian or legal custodian absent a court order granting that authority, and the trial court erred by denying her petition on that basis. See generally OCGA § 29-2-14 (setting forth the power of a court to appoint a guardian); OCGA § 49-5-3 (11) ("'Legal custody' means a legal status created by court order . . ."). Additionally, the juvenile court erred by concluding that it lacked jurisdiction to consider whether J. T. S. S. was a dependent child pursuant to OCGA § 15-11-2 (22) (C). See OCGA § 15-11-10 (1) (C); see also OCGA § 15-11-10 (3) (B) (vesting juvenile court with jurisdiction

8

over proceedings for permanent guardianship in dependency actions); see generally *In the Interest of H. D. G. H.*, 371 Ga. App. at 36; *In the Interest of J. J. X. C.*, 318 Ga. App. at 425. And finally, because the undisputed evidence establishes that J. T. S. S. met the legal definition of a dependent child who "is without his or her parent, guardian, or legal custodian," the juvenile court further erred in ruling that he was not a dependent child under Georgia law. See OCGA § 15-11-2 (22) (C); see also *In re J.J.X.C.*, 318 Ga. App. at 423 ("[T]he court found that clear and convincing evidence had been presented to show that the child was deprived and dependent upon the court because the child is within the borders of Georgia and without proper and adequate care and supervision from a biological parent or legal guardian."). Accordingly, we reverse the juvenile court's rulings with respect to jurisdiction and dependency.

2. J. T. S. S. argues further that the juvenile court erred when, after stating that it lacked jurisdiction to consider Sica's petition, the court disregarded the evidence presented, including the recommendations of the guardian ad litem, and made factual findings with respect to his impending application for SIJ status that were not supported by the record.

In its order, the juvenile court declined to conclude that reunification between J. T. S. S. and his parents was not viable or that the child's return to Guatemala would be contrary to his best interests. In so ruling, the court "did not credit" Sica's hearsay statements concerning the alleged threats to the child, deemed irrelevant the reports submitted regarding the dangerous living conditions and risks to children in Guatemala and broader Central America, and made no mention of the parents' affidavits averring that they were unable to care of J. T. S. S. beyond stating that "the actions of the parents in allowing [Sica] to care for the child [were] reasonably calculated to protect and provide for" him and, thus, they "consented to the provision of the required protection and basic provision through the auspices of" Sica.

Setting aside the circular reasoning related to the evidence allegedly illustrating that J. T. S. S.'s parents were capable of caring for him, it is unclear what evidence the juvenile court relied on to support its factual findings that reunification between J. T. S. S. and his parents was viable and/or that it was in the child's best interests to return to Guatemala. The court appointed a guardian ad litem to represent the child's interests in this matter and the guardian ad litem completed a report of his findings after conducting an investigation. At the hearing, the guardian ad litem referenced his

report and briefly stated his opinion that J. T. S. S. was dependent, would similarly be found dependent in Guatemala, and would be harmed should he be returned home. See OCGA § 15-11-105 (b) (setting forth the factors the guardian ad litem is to consider and evaluate when making a recommendation with respect to the best interests of a child). But although it is clear from the record that the report was submitted to the juvenile court at some point prior to the dependency hearing, the report is not contained in the appellate record and it is not clear whether the juvenile court considered it when rendering its judgment, nor is it clear on what evidence the juvenile court relied when issuing its ruling. Compare *In the Interest of M. J. H.*, 371 Ga. App. 383, 390 (2) (898 SE2d 631) (2024) (affirming the juvenile court's factual findings because "there [was] at least some evidence to support the trial court's conclusion"). Accordingly, we vacate the juvenile court's factual findings as to the viability of J. T. S. S.'s reunification with one or both of his parents and as to his best

interests in being returned to Guatemala. On remand, the record should be perfected with the guardian ad litem's report and the juvenile court's factual findings should be clarified in light thereof.

*Judgment reversed in part, vacated in part, and case remanded. Mercier, C. J., concurs and McFadden, P. J., concurring fully and specially.*

# In the Court of Appeals of Georgia

A24A0613. IN THE INTEREST OF J. T. S. S., a child.

McFADDEN, Presiding Judge, concurring fully and specially.

This action was brought by J. T. S. S.'s adult sister, Angelika Sica, as part of an effort to secure for him the status of "special immigrant" under 8 USCA § 1101 (a) (27). Specifically, she relies on the subsection applicable to immigrant juveniles, 8

USCA § 1101 (a) (27) (J). Under subsection (J), securing that status requires three determinations: two preliminary decisions by a state juvenile court under state law, dependency and best interests, and a final decision by the Secretary of Homeland Security.

I concur fully in the majority opinion. I agree that we must reverse on dependency and remand on best interests.[8] I write separately because, as Sica argues, the juvenile court's findings require a conclusion that J. T. S. S. has been abandoned.

1. *Dependency*

It follows from statutory definitions that J. T. S. S. has been abandoned and consequently is a dependent child. Under the Juvenile Code,

> "Abandonment" or "abandoned" means any conduct on the part of a parent, guardian, or legal custodian showing an intent to forgo parental duties or relinquish parental claims. Intent to forgo parental duties or relinquish parental claims may be evidenced by:

> * * *

---

[8] I also agree that the juvenile court had jurisdiction. I note that the question was decided over a decade ago. *In the Interest of J. J. X. C.*, 318 Ga. App. 420, 426 (734 SE2d 120) (2012). And such proceedings are discussed in detail in the leading treatise on practice in our juvenile courts, Crystal H. Bice, Ga. Juv. Prac. & Proc. § 6:68 (West).

(B) Failure, for a period of at least six months, to maintain regular visitation with a child;

(C) Leaving a child with another person without provision for his or her support for a period of at least six months;

OCGA § 15-11-2 (1).

Here, the juvenile court repeatedly found that "[t]he child's needs with regard to housing, food, clothing, rearing etc. are met by Petitioner. (Testimony of Petitioner and Support Letters of Rocha, Negrete, Sica Sica, and Rodriguez attached to Verified Petition)." The court found that "the parents have consented to the provision of the required protection and basic provision through the auspices of their daughter, the Petitioner[,]" and that "the actions of the parents in allowing the Petitioner to care for the child would be reasonably calculated to protect and provide for the child." And school records, which the juvenile court did credit,[9] establish that Sica has been caring

---

[9] Alternately, although the trial court did not rely on the school records to establish how long J. T. S. S. has been enrolled in the Elbert County Public School System, and so under the care of his sister, J. T. S. S.'s school enrollment is a fact that "definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility[.]" *Hughes v. State*, 296 Ga. 744, 756 n.5 (770 SE2d 636) (2015). Those records show that he has been enrolled in the Elbert County Public School System since at least August 2022, a year before the hearing.

for J. T. S. S. without assistance from his parents for over six months. It follows, in light of the juvenile court's findings, that J. T. S. S. has been abandoned as a matter of law.

And as the majority notes, under OCGA § 15-11-2 (22) (C), the statutory definition of "Dependent child" includes one who "[i]s without his or her parent, guardian, or legal custodian." So I would hold, in light of the juvenile court's findings of fact, that the first of the two criteria assigned to the state courts has been satisfied as a matter law. J. T. S. S. is a dependent child under 8 USCA § 1101 (a) (27) (J) (i).

2. *Best interests*

I also agree with the majority about the inquiry into the best interests of the child, which is required under 8 USCA § 1101 (a) (27) (J) (ii). We must remand that inquiry to the juvenile court for further consideration. Appellant Sica concedes as much.

On remand the juvenile court will be authorized to adhere to his decision not to credit evidence of the dangers J. T. S. S. would face upon return to Guatemala. See *In the Interest of M. J. H.*, 371 Ga. App. 383, 385 (898 SE2d 631) (2024).

The juvenile court will also need to consider the implications of J. T. S. S.'s abandonment. Under the Juvenile Code, abandonment is an aggravating circumstance, OCGA § 15-11-2 (5) (A); aggravating circumstances are a basis for terminating reunification efforts. OCGA § 15-11-203 (a) (1). Abandonment is also among the statutory grounds for termination of parental rights. OCGA § 15-11-310 (a) (4). So while the juvenile court must consider those implications in the first instance, I doubt that we could sustain a holding that, abandonment notwithstanding, reunification would be in J. T. S. S.'s best interests.